**UNITED STATES DISTRICT COURT FOR THE
SOUTHERN DISTRICT OF FLORIDA**

**MIAMI DIVISION**

**CASE NO. 1:23-cv-20793-PAS**

ANTHONY STANLEY, M.D.

                Plaintiff,

vs.

THE BRAVEHEART GROUP, LLC, a New Jersey
Limited Liability Company, d/b/a
THE JOURNAL OF URGENT CARE MEDICINE, and

EXPERITY INC., an Illinois Corporation, d/b/a
EXPERITY HEALTH, and

URGENT CARE ASSOCIATION, INC., an Illinois
Corporation, d/b/a
URGENT CARE ASSOCIATION, and

URGENT CARE COLLEGE OF PHYSICIANS, INC.,
an Illinois Corporation, d/b/a
COLLEGE OF URGENT CARE MEDICINE.

                Defendants.

_____/

**JOINT PROPOSED SCHEDULING ORDER AND DISCOVERY PLAN**

Pursuant to the Order Requiring Counsel to Meet and File a Joint Scheduling Report (DE 16), Plaintiff, Anthony Stanley, M.D. ("Plaintiff" or "Dr. Stanley") and (1) The Braveheart Group, LLC; (2) Experity Inc.; (3) Urgent Care Association, NFP; and (4) Urgent Care College of Physicians (collectively, "Defendants") pursuant to S.D. Fla. L.R. 16.1, hereby file their Joint Scheduling Report and Discovery Plan and state as follows:

32035817.1

I. *Meeting of the Parties and Initial Disclosures*

Pursuant to Local Rule 16.1(b), a telephonic meeting was held on April 25, 2023 between Barry Oliver Chase, Esq. on behalf of the Plaintiff and Chelsea Leigh Furman and Matthew J. Cavanagh on behalf of Defendants. The parties exchanged the initial disclosure information described in Fed. R. Civ. P. 26(a)(1) on or before April 25, 2013.

II. *Case Management Track*

The parties believe that the Standard Case Management Track is appropriate given the time required for trial and the potential complexity of this case. *See* S.D. Fla. L.R. 16.1(a)(2)(B).

III. *Joint Scheduling Report*

**ORDERED A.**

**"A short, plain statement of the nature of the claim, (ii) any counterclaims, (iii) cross-claims or third-party claims with a (iv) good faith estimate of the specific dollar valuation of damages claimed and (v) any other relief sought."[1]**

(i) Dr. Stanley's claim arises from what he regards as copyright infringement of an original work written and owned by Dr. Stanley, submitted by him for publication by the Journal of Urgent Care Medicine ("JUCM"), and published by JUCM in an unlicensed altered form which Dr. Stanley regards as a distorted derivative work.[1]

(ii) Defendants deny Stanley's claims and respond that (a) Stanley approved the content of the article that was published in the JUCM, Stanley was told in writing that some of the photos in the article would have to be removed, and he did not object, and the layout of the article of which he complains was ordinary formatting by the printer or publisher to conform the appearance of the article to the journal in which it appeared, not something that a contributing author controls or approves, and did not change the substance or content of the

---

1. Plaintiff's descriptions of his claims are his own, and not stipulated or joined by defendants. Similarly, defendants' descriptions of their defenses are their own, and not stipulated or joined by defendants. For clarity, plaintiff's own statements are found at Sections III(A)(i), (iv)-(v), and III(C) ("Plaintiff's Claims"). Defendants' own statements are found at Sections III(A)(ii) and III(C) ("Defendants' Defenses").

article; and (b) Stanley's attorneys approved the retraction that the JUCM provided to resolve this matter.

(iii) The parties do not presently expect that any cross-claims or third-party claims will be made.

(iv) Plaintiff seeks statutory damages of $150,000 under section 501 of the United States Copyright Act (17 USC § 101 *et seq*.), plus A minimum of $242,000 in resulting further damages to his professional reputation and livelihood resulting from publication of what Plaintiff regards as the distorted derivative work.

(v) Plaintiff also seeks equitable relief in the nature of (a) JUCM's publication of his article in its original form; and (b) remedial advertising in JUCM to counter damages to Dr. Stanley's reputation and livelihood.

**ORDERED B.**

**"A brief summary of the facts that are uncontested or which can be stipulated to without discovery."**

**The parties have not identified facts to which they are able to stipulate at this time.**

**ORDERED C.**

**"A list of the legal elements of each claim and defense asserted. Consult the Eleventh Circuit or applicable state standard jury instructions for such. The list will be used to help resolve relevance issues in discovery."**

*Plaintiff's Claims:*

First Cause of Action: Federal Copyright Infringement

Elements: Originality of Plaintiff's work; ownership of valid copyright; Certificate of Registration; unlicensed creation, publication and distribution of a "derivative work" under 17 USC § 106(2).

At no point was there a writing signed by Dr. Stanley providing a license for Defendants to exercise

32035817.1

dominion over his copyrighted work and distort its content in a way which would harm Dr. Stanley's professional reputation and livelihood, as JUCM unilaterally chose to do. Plaintiff never imagined, much less intended, that the Defendants would unilaterally publish a materially distorted work and falsely label it as his original work.

Second Cause of Action: Defamation (Florida Law)

> Elements: Defendants' making of a statement of fact; publication of statement; statement caused injury; statement was false; statement was not privileged.

All statements by Defendants that the article JUCM published was the work of Dr. Stanley were libelous and have caused Dr. Stanley damages. Plaintiff never imagined, much less intended, that the Defendants would unilaterally publish a materially distorted work and falsely label it as his original work.

Third Cause of Action: Fraudulent Misrepresentation (Florida Law)

> Elements: False statement of material fact; Defendant knew or should have known that statement was false; Defendant intended that the Plaintiff would act on the false statement; Plaintiff suffered damages acting in reliance on the false statement.

Defendants chose to represent falsely that the distorted derivative work JUCM published in June 2021 was Dr. Stanley's work when they knew or should have known that it was, instead, a materially distorted and medically harmful document. That misrepresentation has caused, and continues to cause, damage to Dr. Stanley.

Fourth Cause of Action: Unfair and Deceptive Trade Practices (Florida Law)

> Elements: Misrepresentation by Defendants; false representation of a service by Defendants.

Defendants' representation that the distorted derivative work was authored by Dr. Stanley was false, and Defendants knew or should have known that it was false and would lead to damages to Dr. Stanley, including but not limited to loss of income and loss of professional reputation. In submitting his original work to the Defendants, Plaintiff never imagined, much less intended, that the Defendants

would unilaterally publish a materially distorted work and label it as his original work.

Fifth Cause of Action: Tortious Interference (Florida Law)

> Elements: Plaintiff has one or more advantageous business relationships; Defendant was aware of said business relationships; Defendants intentionally interfered with said business relationships; Plaintiff was damaged by said interference.

Notwithstanding Defendants' knowledge of Dr. Stanley's ambitious professional goals and the essential support which publication of his original work would provide to reach those goals, Defendants unilaterally and recklessly created and published a distorted derivative work which Defendants knew or should have known would frustrate those goals.

Sixth Cause of Action: Negligent Infliction of Emotional Distress (Florida Law)

> Elements: Plaintiff suffers discernible physical injury; said physical injury caused by psychological trauma; Defendant materially contributed to the psychological trauma.

The behavior of Defendants in unilaterally distorting Dr. Stanley's copyrighted article and refusing to allow him to perform a pre-publication review was outrageous in the context of a medically related publication. The result has been to cause Dr. Stanley physical illness and injury, and resulting loss of time treating urgently ill patients during the recent COVID-19 pandemic.

*Defendants' Defenses:*

Many of Defendants' affirmative defenses do not have a clearly delineated list of proof "elements" per se. Below are the proof elements for some of the affirmative defenses, for which proof elements have been identified in standard jury instructions or caselaw. Defendants are providing these proof elements solely for purposes of this joint report as ordered by the Court to assist the Court with understanding scope of relevance with respect to any potential discovery disputes. By doing so, defendants do not stipulate that these are the proof elements that should be applied to decide the merits of this case at summary judgment, trial, in the actual jury instructions, or otherwise. Defendants would need further development of the factual issues in this case through discovery, and to conduct significant

amounts of legal research, before deciding and stipulating to the correct wording for the proof elements and jury instructions for deciding the merits.

Implied Copyright License (Affirmative Defense Two): plaintiff delivered the work, or caused it to be created, at defendants' request or the request of someone acting on defendants' behalf; plaintiff delivered the work, or caused it to be delivered, to defendant or someone acting on defendant's behalf; plaintiff intended that defendant copy, distribute, publicly display, or create derivative works based upon his copyrighted work. Plaintiff's intent may be inferred from the work's nature or the circumstances surrounding the work's creation.

Express Copyright License (Affirmative Defense Two): defendants received an express license to copy, distribute, publicly display, or created derivative works based upon the copyrighted work.

Copyright Estoppel (Affirmative Defense Five): plaintiff knew the facts of defendants' infringing conduct; plaintiff's statement or conduct (either action or inaction) caused defendants to believe that plaintiff wouldn't pursue a claim for copyright infringement against them; plaintiff intended for defendants to act on his statement or conduct, or defendants had a right to believe plaintiff so intended; defendants didn't know that plaintiff would pursue a claim for copyright infringement against them; defendants were injured as a result of their reliance on plaintiff's statement or conduct.

Unclean Hands (Affirmative Defense Six): plaintiff's alleged wrongdoing is directly related to the claim against which it is asserted; and the defendants were personally injured by the plaintiff's conduct.

Waiver (Affirmative Defense Five): plaintiff has acted or failed to act in a way that could be construed as relinquishment of his rights under the Copyright Act.

Copyright Misuse (Affirmative Defense Ten): plaintiff is using the copyright to secure and exclusive right or limited monopoly not granted by the Copyright Office and which is contrary

to public policy to grant.

Copyright Fair Use (Affirmative Defense Eleven): the copyrighted work is used fairly for purposes such as criticism, comment, news reporting, teaching (including multiple copies for classroom use), scholarship, or research, is not an infringement a copyright. In determining whether the use made of a work is a fair use, the Court should consider: the purpose and character of the use, including whether such use is of a commercial nature or is for nonprofit educational purposes; the nature of the copyrighted work; the amount and substantiality of the portion used in relation to the copyrighted work as a whole; and the effect of the use upon the potential market for or value of the copyrighted work.

Laches (Affirmative Defense Five): plaintiff has unreasonably and inexcusably delayed in prosecuting its rights and the delay has resulted in material prejudice to the defendant.

**ORDERED D.**

**"Whether discovery should be conducted in phases or limited to certain issues."**

At present, the parties see no need for phased or limited discovery, pending specific motions for protective orders or motions to compel, although as explained more below, the parties believe expert disclosures and expert discovery should begin after fact discovery ends.

**ORDERED  E.**

**"A detailed schedule of discovery for each party."**

At present, the parties anticipate that a first round of written discovery (Requests for Production, Requests for Admissions, Interrogatories) shall be completed by August 11, 2023, and all fact discovery and fact depositions be completed by October 17, 2023. Plaintiff's expert disclosures due by November 17, 2023, defendants' disclosures due by January 8, 2024, and expert discovery completed by February 8, 2024.

**ORDERED F.**

**"Proposed dates and/or deadlines for:**

32035817.1

      **Trial: On or before July 22, 2024;**

      **To join other parties: Deadline June 30, 2023;**

      **To amend pleadings: Deadline June 30, 2023;**

      **To file summary judgment motions: Deadline March 8, 2024;**

      **To complete fact and expert discovery**: **Deadline February 8, 2024;**

      **To exchange Fed. R. Civ. P. 26(a)(3) disclosures: Deadline June 21, 2024;**

      **To complete mediation**: **October 31, 2023;**

      **ORDERED G.**

**"Estimated length of trial and whether it is jury or non-jury."**

The parties anticipate that the trial will be completed in  5  business days; Plaintiff has demanded a jury trial.

      **ORDERED H.**

**"A list of all pending motions, whether each is "ripe" for review, the date each became ripe and a summary of the parties' respective positions with respect to each ripe motion."**

There are no pending motions at this time.

      **ORDERED I.**

**"Any unique legal or factual aspect of the case requiring the Court's special consideration, including, but not limited to issues listed in Local Rule 16.1(b)(2)(k)."**

At this time, the parties are unaware of any aspect requiring such special consideration.

      **ORDERED J.**

**"A statement as to the need (or agreement) to refer matters, including motions to dismiss, motions for summary judgment and discovery to the Magistrate Judge or special master."**

  **SUBMITTED ON ATTACHMENT C.**

      **ORDERED K.**

**"The status and likelihood of settlement."**

   The parties agree that it is premature to determine whether the settlement of this dispute is likely, but

32035817.1

agree to explore the possibilities of settlement in good faith prior to and at mediation.

**ORDERED L.**

**"Any other matters that Local Rule 16.1 B requires, or that may aid in the fair, expeditious and efficient management and/or disposition of this action."**

Pursuant to the Court's "ORDER REQUIRING JOINT SCHEDULING REPORT, the parties hereby certify that the initial disclosures under Fed. R. Civ. P. 26(a)(1) were made at or before the parties conferred to develop their case management and discovery plan.

Dated: May 15, 2023

| | |
|---|---|
| ChaseLawyers | McDonald Hopkins LLC |
| 21 SE 1st Avenue, Suite 700 | 600 Superior Avenue, East, Suite 2100 |
| Miami, Florida 33131 | Cleveland, Ohio 44114 |
| Telephone: (305) 373-7665 | Telephone: (216) 348-5730 |
| | |
| Attorneys for Plaintiff | Attorneys for Defendants |
| *admitted pro hac vice* | |
| By: /Barry Chase/ | By:   s/ Matthew J. Cavanagh |
| Barry Chase, Esq. | Matthew Cavanagh, Esq. |
| Florida Bar No.: 0083666 | Ohio Bar No. 79522 |
| barry@chaselawyers.com | mcavanagh@mcdonaldhopkins.com |
| | |
| | *Attorneys for Defendants* |