# UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF FLORIDA

### MIAMI DIVISION
### CASE NO. 1:23-cv-20793-PAS

ANTHONY STANLEY, M.D.

Plaintiff,

vs.

THE BRAVEHEART GROUP, LLC, a New Jersey
Limited Liability Company, d/b/a
THE JOURNAL OF URGENT CARE MEDICINE

Defendants.

_____/

## ATTORNEY BARRY OLIVER CHASE'S RESPONSE IN OPPOSITION TO PLAINTIFF'S "MOTION FALSE SETTLEMENT FILING NOTIFICATION" AND REQUEST FOR ATTORNEY FEES

### PRELIMINARY STATEMENT

The attached Response in Opposition (hereinafter "Opposition") to Dr. Anthony Stanley's "Motion False Settlement Filing Notification" [DE 50], filed herein on June 30, 2024 (hereinafter "Motion") is filed by attorney Barry Oliver Chase in reliance on (1) R. Regulating Fla. Bar 4-1.6 regarding confidential information; (2) S.D. Fla. L.R. 16.2(g)(2); and (3) Fl. Stat. §§ 44.405(4)(a)4, 44.405(4)(a)5 and 44.405(4)(a)6 (2004), because it may disclose otherwise confidential (1) attorney-client communications; and/or (2) material relating to a Court-ordered Mediation.  If the Court regards the above-cited provisions as insufficient to release undersigned counsel and his associated attorneys from duty of confidentiality, please treat the attached as a Motion to File Under Seal having been filed pursuant to S.D. Fla. L.R. 5.4(b)for the Court's eyes only.

The relevant language in R. Regulating Fla. Bar 4-1.6 is in subsection (b)(4), as follows:

"(b) When Lawyer Must Reveal Information. A lawyer must reveal confidential information to the extent the lawyer reasonably believes necessary to: …
(4) respond to allegations in any proceeding concerning the lawyer's representation of the client…."

The relevant language in Local Rule 16.2(g)(2) is as follows:

(2) Restrictions on the Use of Information Derived During the Mediation Conference. All proceedings of the mediation shall be confidential and are privileged in all respects as provided under federal law and Florida Statutes § 44.405. The proceedings may not be reported, recorded, placed into evidence, made known to the Court or jury, or construed for any purpose as an admission against interest. A party is not bound by anything said or done at the conference, unless a written settlement is reached, in which case only the terms of the settlement are binding. (emphasis added) S.D. Fla. L.R. 16.2(g)(2)

The relevant language in Florida Statutes § 44.405 is as follows:

(1)     Except as provided in this section, all mediation communications shall be confidential….

(2)     4)(a) Notwithstanding subsections (1) and (2), there is no confidentiality or privilege attached to a signed written agreement reached during a mediation, unless the parties agree otherwise, or for any mediation communication:

    4. Offered to report, prove, or disprove professional malpractice occurring during the mediation, solely for the purpose of the professional malpractice proceeding;

    5. Offered for the limited purpose of establishing or refuting legally recognized grounds for voiding or reforming a settlement agreement reached during a mediation; or

    6. Offered to report, prove, or disprove professional misconduct occurring during the mediation, solely for the internal use of the body conducting the investigation of the conduct. (Emphasis added) Fl. Stat. §§ 44.405(4)(a)4, 44.405(4)(a)5 and 44.405(4)(a)6 (2004)

Because the Motion accuses the undersigned of having engaged in:

    -- a "fraudulent filing" (Motion at 1);

    -- failing to represent Dr. Stanley as required ("no defense counseling, or legal advisement

services were rendered" (Motion at 1-2);

    -- "duress" (Motion at 2);

-- improper behavior to "keep [his] image intact" (Motion at 4);

-- "premeditated deception and lies to the detriment to me" (Motion at 4); and

-- "Legal Malpractice" (Motion at 4),

the undersigned attorney believes in good faith that the above-cited conditions of Bar Rule 4-1.6,

Local Rule 16.2 and Fla. Stat. 44.405 are fulfilled.

## OPPOSITION

Attorney Barry Oliver Chase ("Chase") hereby files this Opposition to Plaintiff's Motion

and in support states:

## INTRODUCTION AND BACKGROUND

This litigation stems from Dr. Stanley's (hereinafter "Stanley" or "Dr. Stanley")

accusations of (1) Copyright Infringement; (2) Defamation; (3) Fraudulent Misrepresentation; and

(4) Tortious Interference against the Defendants, who are or were entities responsible for a

professional medical publication known as the "Journal of Urgent Care Medicine" ("JUCM") [DE

40]. The underlying issue was whether JUCM made unauthorized and/or medically inaccurate

revisions to an article written and submitted to JUCM by Dr. Stanley concerning proper methods

of fishhook removal. Throughout the undersigned's representation of Dr. Stanley in that litigation

(from May 2022 to August 2023), Dr. Stanley's case rested in part on letters (and one petition)

from medical colleagues, the substance of which was that JUCM's revisions to Dr. Stanley's

original submission had violated Dr. Stanley's rights and caused him professional and business-

related damages. In support of his claims against JUCM, Dr. Stanley provided supposedly

spontaneous statements from other medical professionals expressing great concern over JUCM's

purported revisions. In response to the undersigned's repeated queries about the provenance of

these supportive statements, Dr. Stanley consistently represented to the undersigned and his

Associate Attorney, to the Parties, and to this Court that those statements had been authored spontaneously by their authors. Beginning with the first draft of the Complaint herein, which was sent for Dr. Stanley's review on May 25, 2022, these statements were included as support for Dr. Stanley's claim that the medical community generally agreed that JUCM's revisions had impermissibly distorted Dr. Stanley's original article submitted to JUCM.

Throughout the undersigned's period of representation – which included multiple drafts of his Complaint, all relying substantially on the aforementioned support letters – Stanley misled the undersigned regarding the origin of these supportive statements. In response to the undersigned's direct questions about how these statements were created, Stanley assured me, as his counsel, that they were spontaneous, each one organically created by its author and based on the author's own professional comparison of Stanley's original submitted article and the revised JUCM version. *See Exhibit A, which is attached hereto and made a part hereof by this reference.* As Stanley said in an email to the undersigned on December 12, 2022: "I have received a lot of support from the Doctors, Nurses, Unit Clerks and even the Housekeepers, to get the wrong doings [sic] corrected." *See Exhibit B, which is attached hereto and made a part hereof by this reference.*

Never once during what turned out to be Stanley's detailed review and comments on each of the Complaint drafts did Dr. Stanley express any hesitation in utilizing these supportive statements as a central feature of his Complaint. He even expressed joy at his colleagues' rejection of the companies behind JUCM, saying on January 23, 2023, that, in retaliation for JUCM's behavior they would not attend a JUCM-related meeting: "A couple of the physicians who signed the petition here in Miami, stated they are not going or canceled their convention registration!" *See Exhibit C, which is attached hereto and made a part hereof by this reference.*

As the Mediation date approached, and we asked to speak to our key witness Dr. William Kranichfeld – a physician who supposedly offered Dr. Stanley a teaching position at Baptist South and then withdrew the offer after seeing the JUCM version of his article – we began to sense some delay and resistance in recruiting witness commitments from Dr. Kranichfeld and other signers of supportive correspondence. Thus, on July 21, 2023, we asked Dr. Stanley to arrange for Dr. Kranichfeld to accept our calls, telling our client that: "In order to get ANYWHERE with witnesses on your behalf, it's seems to me, we need to start with Dr. K." *See Exhibit D, which is attached hereto and made a part hereof by this reference.*

Finally, on August 17, 2023, one week prior to the Mediation date, we were able to reach Dr. Kranichfeld (who was strangely evasive even while agreeing to be a witness for his colleague), and reported the following to Dr. Stanley: "We have confirmed with Dr. Kranichfeld that he will make himself available (as his schedule permits) for a deposition and for testimony at trial. We are awaiting further information from other possible witnesses." *See Exhibit E, which is attached hereto and made a part hereof by this reference.*

Literally on the eve of Mediation, the undersigned was shocked to receive a disturbing call and this follow-up email from opposing counsel:

From: "Cavanagh, Matthew J." <mcavanagh@mcdonaldhopkins.com>
Subject: Stanley v. Experity
Date: August 24, 2023 at 4:49:04 PM EDT
To: 'Barry Chase' barry@chaselawyers.com

Barry,

Attached is the Bonnie O'Sullivan subpoena response and the Bonnie O'Sullivan letter that was cited and quoted in the complaint (and the other complaint letters). As I stated on the phone, I consider this to be fabrication of evidence by Dr. Stanley because he represented to us and in the complaint that it happened organically, when (in fact) it was orchestrated by him. The letter (written by Stanley) states that Dr. O'Sullivan "came across" the letter and was "hesitant to contact you," when it was Stanley himself that approached her and wrote the letter verbatim for her. Making matters worse, Dr. Stanley did not produce this

letter in discovery and told you that he did not have any further emails with third-parties about the article. He either was not honest with you or deleted these type of emails with the complaint authors. If the latter occurred, that would be spoliation because he emailed Dr. O'Sullivan after he engaged your law firm and thus litigation was contemplated at that time. Dr. O'Sullivan's production also shows that Dr. Stanley contacted her by text message this past Monday (on the day the subpoenas went out), told her not to talk to anyone from CritiCare and asking for a "call" to discuss. We expect similar work was done by Dr. Stanley with the other complaint letter authors, and we expect that he is contacting those witnesses now by text message and otherwise about the subpoenas.

If we are unable to settle, we will ask the Court to order a forensic inspection of his hard drives, email boxes, and text messages, at Dr. Stanley's cost.

We ask that you instruct Dr. Stanley to preserve (and not destroy) all emails and text messages concerning the article or the lawsuit and not to meddle with any witness's response to the subpoena.

We can discuss more tomorrow at mediation and in the coming days.

Regards,

Matt"

*See Exhibit F, which is attached hereto and made a part hereof by this reference.* While undersigned counsel was stunned to hear of this development, a phone call with Dr. Stanley confirmed the accuracy of what opposing counsel reported, but with Dr. Stanley resisting the distinction between other-generated letters of support and manufactured evidence in anticipation of litigation.  It was my judgment at that time that (1) I could not continue to represent a client who had lied to me over many months about a material element of his case; and (2) Dr. Stanley would be best served by a "Settlement" which extricated him from further misrepresenting the facts of the fraudulent supportive letters and let him "walk away".

The undersigned and opposing counsel immediately reported this matter to the Mediator, Jeffrey Grubman, Esq., of Stollman & Grubman, PA.  The three of us agreed that opposing counsel would draft the Settlement Agreement – the four (4) page document that Dr. Stanley now claims was surreptitiously revised into a subsequent five (5) page document after the undersigned made

certain immaterial revisions. A redline comparison of the two versions of the Settlement Agreement is attached to this Opposition as *Exhibit G*, *which is attached hereto and made a part hereof by this reference.* A brief glance at Exhibit G will confirm that – notwithstanding Dr. Stanley's energetic "conspiracy" charges – the two versions are not materially different from one another.

In any event, after one or two brief conversations between counsel on the evening of August 24, shortly after noon on August 25, I emailed Dr. Stanley a redline of the differences between the original draft and my slightly revised draft (*attached hereto as Exhibit G, which is made a part hereof by this reference*), saying:

"We have agreement on the terms of the Settlement Agreement (attached below), which preserves your right to re-submit the revised article (after Ana and/or I revise the typos), which JUCM must receive and handle "in good faith" according to their then-standard procedures and timelines." *See Exhibit H, which is attached hereto and made a part hereof by this reference.*

Dr. Stanley now pretends that he never saw this slightly revised version, that it is some kind of nefarious document cooked up in a conspiracy of lawyers and filed surreptitiously with the Court. His current pretense about the materiality of the revisions between the two versions of the Settlement Agreement is as misleading as his multiple responses to me about the provenance of the documents he submitted to us as supporting his position vis-à-vis JUCM.

Here is a summary of the events of August 24-25, 2023:

-- At approximately 11:38 AM the undersigned received a draft of the Agreement from opposing counsel Cavanagh with the affixed serial number "32435104.1" on each page (the "Original Draft") for review. (See, Email from Cavanagh to Chase attached *as Exhibit J, which is attached hereto and made a part hereof by this reference*) and forwarded the email to Plaintiff at

approximately 12:01 PM stating, "I have just received the attached. Please review and give me your comments…". *See, Exhibit J.*

-- At approximately 12:20 PM the undersigned submitted to Stanley a redline of the Original Draft for his review. See, *Email from Chase to Stanley attached as Exhibit K.*

-- After receiving Plaintiff's approval, at approximately 1:04 PM the undersigned submitted the redlined version of the Original Draft to Mr. Cavanagh for his review, to the Parties' Mediator, Jeffrey S. Grubman ("Grubman"), and copied Plaintiff (which revisions Cavanagh then accepted). *See, Email from Chase to Grubman, Cavanagh, and Plaintiff attached as Exhibit L.*

-- At approximately 1:29 PM the undersigned submitted to Stanley a final version of the Agreement, with the affixed serial number "32437828.2" on each page ("Final Draft"), received from Cavanagh with my accepted changes, stating "[w]e have agreement on the terms of the Settlement Agreement (attached below) … [p]lease print out, sign on page 4, scan and email back to me …" *See, Exhibit M, which is attached hereto and made a part hereof by this reference.*

-- At approximately 2:48 PM Stanley submitted to Grubman and the undersigned a photograph copy of a signed page 4. But the photo depicted page 4 of the original Draft and not the revised final Draft which the undersigned forwarded to Cavanagh. *See, Email from Plaintiff to Grubman and Chase and Email from Chase to Cavanagh attached as Exhibit N, which is attached hereto and made a part hereof by this reference.*

-- At approximately 4:55 PM Plaintiff wrote "Barry, thank you and Ana for staying with me today! Sorry [sic] I made a couple of bad decisions trying to help*". See, Email from Plaintiff to Chase attached as Exhibit O, which is attached hereto and made a part hereof by this reference.* Stanley has made other attempts to evade the Settlement Agreement prior to this. For example, during another disturbing episode, on or about October 25, 2023, Plaintiff contacted the

undersigned requesting advice on the statute of limitations for an appeal of the Settlement, fabricating the argument that he could not exercise signatory authority on behalf of his company to enter into the Agreement and that "Cavanagh and Furman took excessive advantage of [him]" (notably not Chase this time).  *See, Email from Plaintiff to Chase attached as Exhibit P, which is attached hereto and made a part hereof by this reference.*  The undersigned replied, stating that

> it would be "EXTREMELY INADVISABLE to attempt any reopening of the Settlement terms, and our firm would not participate in any such effort…[i]t is important that you realize that you are AT LEGAL RISK, in that you caused misrepresentations to be made to the Court…[y]ou "manufactured" after-the-fact bogus evidence to support your claims and thereby filed (unbeknownst to us, since you deceived us as well) fraudulent papers with the Court, which is a SERIOUS OFFENSE, possibly punishable by a contempt citation and even jail time… [y]ou must understand that it was only because of our healthy professional relationship with JUCM's lawyers and the JAMS Mediator that we were able to obtain the "walkaway" settlement that we did…[h]aving succeeding in extricating you from what could have been a disastrous outcome, we will have nothing to do with any effort to revisit that outcome, which you and we were lucky to achieve. *See, Exhibit P.*

Plaintiff now claims that he was the target of a vast conspiracy by Chase and opposing attorneys Cavanagh and Chelsea Furman ("Furman"), with Mediator Grubman thrown in for good measure to

> "obtain a signed, False Narrative Draft that will make them all come out looking squeaky clean, limit the reprisals of Dr. Stanleys [sic] claims copyright infringement and predatory publishing, enhance their personal esteem, advocate for continued employment potential with their employer, and for some, just keep their "image intact" (the "Conspiracy").  DE 50, at 4.

In support of his alleged conspiracy, Stanley, as further explained and disproved below, fabricated a narrative using various draft versions of the Parties' Settlement Agreement (the "Agreement") in a last-ditch effort to relitigate this case.  Stanley's inflammatory and conclusory accusations have no basis in law or in fact, and this Court must reject using this Court as a platform to continue to perpetrate his fraud.

**ARGUMENT**

**1.      There is no Material Difference Between the Two Documents that Dr. Stanley now Characterizes as Resulting from a "Conspiracy" of Some Sort.**

In support of the alleged "conspiracy", Plaintiff submitted to this Court two (2) versions of the Agreement (the Original Draft and the Final Draft as defined above) alleging that drafting took place over a five (5) day period with a final redrafting date of the Agreement taking place on August 29, 2023 and claiming that this is evidence of what he calls "a false narrative draft" [DE 50, at 4], charging that

> [t]he documents attorney Matthew Logan signed are fake, altered documents (terms were changed on every page #1-4 of which they attached signature page #5 from Dr. Stanleys [sic] originally signed document from 8/25/2023… [t]his can be verified by checking the serial #'s on the bottom left conner [sic] of each document you have filed…[t]hey are difference from page #5…I would like to bring your attention to Terms section #3 on Page 2. Resubmission this is a revised version from the original I signed on 8/25/2023, after reading it, in comparison from the original I signed, one can see, it is another unlawful attempt to strengthen their control over potential authors…. (Ibid.).

As is made clear in the "redline" version attached as Exhibit G, there is in fact no material difference between the two "versions" about which Stanley now challenges the Settlement. Indeed, whichever version the Court might consider, this matter was disposed of in August 2023.

**2.      There being no material difference between the two documents about which Stanley is now complaining. Indeed, given the near-identity of the two documents, it is a matter of no consequence which one is ultimately the effective version of the terms for Settlement.**

**CONCLUSION**

It is manifest that there is nothing to Stanley's claims in this attempt to revive a long-settled and unsuccessful (for Dr. Stanley) abuse of the judicial process.  It has consumed more than a full day of the undersigned's time to dig through the voluminous communications relating to this matter.  Accordingly, should it please the Court, the undersigned requests reasonable reimbursement of his time in responding to this bogus filing by Dr. Stanley.

It is apparent that Plaintiff seeks, as he did in the active period of this closed litigation, to use this Court as a platform to further promulgate fraud, waste judicial resources and numerous hours of legal time for the "conspiring" attorneys to defend against his frivolous and dubious claims.

For the foregoing reasons, the Court should confirm its original Order of Dismissal [DE 49] and award the undersigned a reasonable attorney fee for being required to prepare and file the foregoing.

Dated: July 12, 2024                                    Respectfully submitted,

                                                       CHASELAWYERS
                                                        /s/ Barry Chase
                                                       Barry Chase, Bar # 0083666
                                                       ChaseLawyers
                                                       21 SE 1st Avenue, Suite 700, Miami, Florida,
                                                       33131
                                                       Telephone: (305) 373-7665
                                                       Facsimile: (305) 373-7668
                                                       Email: barry@chaselawyers.com

**CERTIFICATE OF SERVICE**

I, Barry Chase, certify that on July 12, 2024, a true and correct copy of the foregoing Response in Opposition to Plaintiff's "Motion False Settlement Filing Notification" and Request For Attorney Fees was filed with the Clerk of the Court and served upon counsel for the all parties via the Court's CM/ECF system and by email to Plaintiff Anthony Stanley at stanmeddesigns@gmail.com.

/s/ Barry Chase

Barry Chase, Esq.

**UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF FLORIDA**

**MIAMI DIVISION**
**CASE NO. 1:23-cv-20793-PAS**

ANTHONY STANLEY, M.D.

                         Plaintiff,

       vs.

   THE BRAVEHEART GROUP, LLC, a New Jersey
   Limited Liability Company, d/b/a
   THE JOURNAL OF URGENT CARE MEDICINE

Defendants.

_____/

# EXHIBIT A

**To**
**ATTORNEY BARRY OLIVER CHASE'S RESPONSE IN OPPOSITION TO**
**PLAINTIFF'S "MOTION FALSE SETTLEMENT FILING NOTIFICATION"**
**And**
**REQUEST FOR ATTORNEY FEES**
**(Filed July 12, 2024)**



**Blanche Berger**
[External] AUGUST 25 MEDIATION DATE; Potential Witness Responses; Response to the "impossible"
To:  Matthew J. Cavanagh,  Chelsea Furman

July 7, 2023 at 12:01 PM

Good Morning Matt and Chelsea:

1. Please note that the August 25 Mediation date has been approved by Dr. Stanley, and that I will lock that in with Mr. Grubman's office.

2. We expect responses from potential witnesses by Friday July 14 and will keep you current on that.

3. You have characterized as "not possible" the absence of written communications between Dr. Stanley and signatories to the September 2021 Petition sent to JUCM. Please be advised that I have personally pressed Dr. Stanley about that, and that he has confirmed that there are no such written communications about the Petition apart from lawyer-client communications seeking legal advice, which are privileged. All communications between the signatories and Dr. Stanley were oral. And, of course, you will have every opportunity to press Dr. Stanley on this point yourself during deposition and trial.

Wishing you a pleasant weekend.

*Barry Chase*
"He, Him, His"

Senior Partner

WARNING] This email originated outside of McDonald Hopkins
Do not click links or open attachments unless you recognize the sender and know the content is safe. Do not provide your user ID or password!

Miami 305-373-7665
New York 212-601-2762
Work-From-Home Tel: 305-788-7665
CONFIDENTIAL COMMUNICATION

E-mails from our firm often contain confidential and privileged material and are for the sole use of the intended recipient. Use or distribution by an unintended recipient is prohibited, and may be a violation of law. If you believe that you received this e-mail in error, please do not read this e-mail or any attached items. Please delete the e-mail and all attachments, including any copies thereof, and inform the sender that you have deleted the e-mail, all attachments and any copies thereof. Thank you.

**IRS Circular 230 Disclosure:**  To ensure compliance with requirements imposed by the IRS, any U.S. federal tax advice contained in this communication (including any attachments) is not intended or written to be used, and cannot be used, for the purpose of (i) avoiding penalties under the Internal Revenue Code or (ii) promoting, marketing or recommending to another party any transaction or matter addressed herein.

**Virus Warning:** The sender believes that this email and any attachments were free of any virus, worm, Trojan horse, and/or malicious code when sent.  By reading the message and opening any attachments, the recipient  assumes the risk of viruses and other defects.  ChaseLawyers® is not liable for any loss or damage arising in any way from this message or its attachments.  Email transmission cannot be guaranteed to be secure or error-free as information can be intercepted, corrupted, lost, destroyed, arrive late or incomplete, or contain viruses.

**UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF FLORIDA**

**MIAMI DIVISION**
**CASE NO. 1:23-cv-20793-PAS**

ANTHONY STANLEY, M.D.

                   Plaintiff,

    vs.

  THE BRAVEHEART GROUP, LLC, a New Jersey
  Limited Liability Company, d/b/a
  THE JOURNAL OF URGENT CARE MEDICINE

Defendants.

_____/

# EXHIBIT B

**To**
**ATTORNEY BARRY OLIVER CHASE'S RESPONSE IN OPPOSITION TO**
**PLAINTIFF'S "MOTION FALSE SETTLEMENT FILING NOTIFICATION"**
**And**
**REQUEST FOR ATTORNEY FEES**
**(Filed July 12, 2024)**

 **Anthony Stanley MD**
Re: New findings of damages

To:  Anastasia Latman,  Cc:  Barry Chase

Inbox – ChaseLawyers    December 12, 2022 at 8:56 AM

Details

Thank you for the update. It will be nice to **send the JUMC and Friends a Holiday Gift to remember!**
I have received a lot of support from the Doctors, Nurses, Unit Clerks and even the Housekeepers, to get the wrong doings corrected.

I will be off all week for discussions as necessary.

Dr. Stanley

**UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF FLORIDA**

**MIAMI DIVISION**
**CASE NO. 1:23-cv-20793-PAS**

ANTHONY STANLEY, M.D.

                Plaintiff,

    vs.

  THE BRAVEHEART GROUP, LLC, a New Jersey
  Limited Liability Company, d/b/a
  THE JOURNAL OF URGENT CARE MEDICINE

Defendants.
_____/

# EXHIBIT C

**To**
**ATTORNEY BARRY OLIVER CHASE'S RESPONSE IN OPPOSITION TO**
**PLAINTIFF'S "MOTION FALSE SETTLEMENT FILING NOTIFICATION"**
**And**
**REQUEST FOR ATTORNEY FEES**
**(Filed July 12, 2024)**

**From:** **Anthony Stanley MD** stanmeddesigns@gmail.com
**Subject:** Leverage
**Date:** January 23, 2023 at 10:09 PM
**To:** Anastasia Latman anastasia@chaselawyers.com
**Cc:** Barry Chase barry@chaselawyers.com



# REDACTED

==shafting== one of their own ==First-Responder Physician Comrades==. A couple of the physicians who signed the petition here in Miami, stated they are not going or canceled their convention registration!

# REDACTED

Take care
Dr. Stanley

Trade Shows Home > Special Purpose Machinery Fairs > Urgent Care Convention 2023

Urgent Care Convention 2023



**Urgent Care Convention 2023**
Annual Convention of Urgent Care Association
Dates: 3/31/2023 - 4/5/2023
Venue: Caesars Forum, Las Vegas NV, United States

67 days left

Urgent Care Association (UCA) is recognized as the largest, most notable trade and professional association in Urgent Care with a membership of more than 4,000 Urgent Care centers representing Urgent Care clinical and business professionals from the United States and abroad.

Website: https://www.ucaoa.org/Learn/Participation/Annual-Convention

**Future Dates:**

Urgent Care Convention 2024                                    TBD, United States

**UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF FLORIDA**

**MIAMI DIVISION**
**CASE NO. 1:23-cv-20793-PAS**

ANTHONY STANLEY, M.D.

                    Plaintiff,

vs.

  THE BRAVEHEART GROUP, LLC, a New Jersey
  Limited Liability Company, d/b/a
  THE JOURNAL OF URGENT CARE MEDICINE

Defendants.

_____/

# EXHIBIT D

**To**
**ATTORNEY BARRY OLIVER CHASE'S RESPONSE IN OPPOSITION TO**
**PLAINTIFF'S "MOTION FALSE SETTLEMENT FILING NOTIFICATION"**
**And**
**REQUEST FOR ATTORNEY FEES**
**(Filed July 12, 2024)**

Mail   File   Edit   View   Mailbox   Message   Format   Window   Help

Archive   Delete   Junk   Reply   Reply All   Forward                                        Print   Flag   Move to... Move

From Barry Chase, Attorney for Dr. Stanley in Stanley v Braveheart — Drafts (Gmail)

**Blanche Berger**                                                                              July 21, 2023 at 10:02 AM
Re: From Barry Chase, Attorney for Dr. Stanley in Stanley v Braveheart
To:  Anthony Stanley MD,   Cc:  Anastasia Latman,   Bcc:  Barry Chase                          Details

Thank you for reminding Dr. K.

In order to get ANYWHERE with witnesses on your behalf, it's seems to me, we need to start with Dr. K.

/Barry Chase/
"He, Him, His"

Senior Partner



Miami 305-373-7665
New York 212-601-2762
Work-From-Home Tel: 305-788-7665
CONFIDENTIAL COMMUNICATION
E-mails from our firm often contain confidential and privileged material and are for the sole use of the intended recipient. Use or distribution by an unintended recipient is prohibited, and may be a violation of law. If you believe that you received this e-mail in error, please do not read this e-mail or any attached items. Please delete the e-mail and all attachments, including any copies thereof, and inform the sender that you have deleted the e-mail, all attachments and any copies thereof. Thank you.
IRS Circular 230 Disclosure:  To ensure compliance with requirements imposed by the IRS, any U.S. federal tax advice contained in this communication (including any attachments) is not intended or written to be used, and cannot be used, for the purpose of (i) avoiding penalties under the Internal Revenue Code or (ii) promoting, marketing or recommending to another party any transaction or matter addressed herein.

Virus Warning: The sender believes that this email and any attachments were free of any virus, worm, Trojan horse, and/or malicious code when sent.  By reading the message and opening any attachments, the recipient  assumes the risk of viruses and other defects.  ChaseLawyers® is not liable for any loss or damage arising in any way from this message or its attachments.  Email transmission cannot be guaranteed to be secure or error-free as information can be intercepted, corrupted, lost, destroyed, arrive late or incomplete, or contain viruses.

See More from Anthony Stanley

**Blanche Berger**                                                                              July 20, 2023 at 2:51 PM
Fwd: From Barry Chase, Attorney for Dr. Stanley in Stanley v Braveheart
To:  Anthony Stanley MD,   Cc:  Anastasia Latman,   Bcc:  Barry Chase                          Details

Attached please find the email which I sent to Dr. K last night. No response as of yet.

**UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF FLORIDA**

**MIAMI DIVISION**
**CASE NO. 1:23-cv-20793-PAS**

ANTHONY STANLEY, M.D.

                           Plaintiff,

       vs.

   THE BRAVEHEART GROUP, LLC, a New Jersey
   Limited Liability Company, d/b/a
   THE JOURNAL OF URGENT CARE MEDICINE

Defendants.
_____/

# EXHIBIT E
**To**
**ATTORNEY BARRY OLIVER CHASE'S RESPONSE IN OPPOSITION TO**
**PLAINTIFF'S "MOTION FALSE SETTLEMENT FILING NOTIFICATION"**
**And**
**REQUEST FOR ATTORNEY FEES**
**(Filed July 12, 2024)**



AUGUST 25 MEDIATION DATE; Potential Witness Responses; Response to the "impossible" — Blanche Berger

**BB**  **Blanche Berger**
Re: AUGUST 25 MEDIATION DATE; Potential Witness Responses; Response to the "impossible"
**To:** Matthew J. Cavanagh,  **Bcc:** Barry Chase,   Anastasia Latman,   Anthony Stanley MD

August 17, 2023 at 3:45 PM

Details

We have confirmed with Dr. Kranichfeld that he will make himself available (as his schedule permits) for a deposition and for testimony at trial.

We are awaiting further information from other possible witnesses.


*|Barry Chase|*

"He, Him, His"

Senior Partner

**CHASE LAWYERS**

Miami 305-373-7665
New York 212-601-2762
Work From-Home Tel: 305-788-7665

CONFIDENTIAL COMMUNICATION
E-mails from our firm often contain confidential and privileged material and are for the sole use of the intended recipient. Use or distribution by an unintended recipient is prohibited, and may be a violation of law. If you believe that you received this e mail in error, please do not read this e mail or any attached items. Please delete the e mail and all attachments, including any copies thereof, and inform the sender that you have deleted the e mail, all attachments and any copies thereof. Thank you.
 IRS Circular 230 Disclosure:  To ensure compliance with requirements imposed by the IRS, any U.S. federal tax advice contained in this communication (including any attachments) is not intended or written to be used, and cannot be used, for the purpose of (i) avoiding penalties under the Internal Revenue Code or (ii) promoting, marketing or recommending to another party any transaction or matter addressed herein.

Virus Warning: The sender believes that this email and any attachments were free of any virus, worm, Trojan horse, and/or malicious code when sent. By reading the message and opening any attachments, the recipient  assumes the risk of viruses and other defects. ChaseLawyers® is not liable for any loss or damage arising in any way from this message or its attachments.  Email transmission cannot be guaranteed to be secure or error-free as information can be intercepted, corrupted, lost, destroyed, arrive late or incomplete, or contain viruses.

See More from Matthew J. Cavanagh

**BB**  **Blanche Berger**
AUGUST 25 MEDIATION DATE; Potential Witness Responses; Response to the "impossible"
**To:** Matthew J. Cavanagh,   Chelsea Furman,  **Bcc:** Barry Chase,   Anastasia Latman,   Anthony Stanley MD

July 7, 2023 at 12:01 PM

Details

**UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF FLORIDA**

**MIAMI DIVISION**
**CASE NO. 1:23-cv-20793-PAS**

ANTHONY STANLEY, M.D.

                        Plaintiff,

        vs.

  THE BRAVEHEART GROUP, LLC, a New Jersey
  Limited Liability Company, d/b/a
  THE JOURNAL OF URGENT CARE MEDICINE

Defendants.
_____/

# EXHIBIT F
**To**
**ATTORNEY BARRY OLIVER CHASE'S RESPONSE IN OPPOSITION TO**
**PLAINTIFF'S "MOTION FALSE SETTLEMENT FILING NOTIFICATION"**
**And**
**REQUEST FOR ATTORNEY FEES**
**(Filed July 12, 2024)**

**From:** Barry Chase blanche@chaselawyers.com 
**Subject:** Fwd: Stanley v. Experity
**Date:** August 24, 2023 at 4:51 PM
**To:** Anastasia Latman anastasia@chaselawyers.com, Anthony Stanley stanmeddesigns@gmail.com





Begin forwarded message:

**From:** "Cavanagh, Matthew J." <mcavanagh@mcdonaldhopkins.com>
**Subject:** Stanley v. Experity
**Date:** August 24, 2023 at 4:49:04 PM EDT
**To:** 'Barry Chase' <barry@chaselawyers.com>

Barry,

Attached is the Bonnie O'Sullivan subpoena response and the Bonnie O'Sullivan letter that was cited and quoted in the complaint (and the other complaint letters). As I stated on the phone, I consider this to be fabrication of evidence by Dr. Stanley because he represented to us and in the complaint that it happened organically, when (in fact) it was orchestrated by him. The letter (written by Stanley) states that Dr. O'Sullivan "came across" the letter and was "hesitant to contact you," when it was Stanley himself that approached her and wrote the letter verbatim for her. Making matters worse, Dr. Stanley did not produce this letter in discovery and told you that he did not have any further emails with third-parties about the article. He either was not honest with you or deleted these type of emails with the complaint authors. If the latter occurred, that would be spoliation because he emailed Dr. O'Sullivan <u>after</u> he engaged your law firm and thus litigation was contemplated at that time. Dr. O'Sullivan's production also shows that Dr. Stanley contacted her by text message this past Monday (on the day the subpoenas went out), told her not to talk to anyone from CritiCare and asking for a "call" to discuss. We expect similar work was done by Dr. Stanley with the other complaint letter authors, and we expect that he is contacting those witnesses now by text message and otherwise about the subpoenas.

If we are unable to settle, we will ask the Court to order a forensic inspection of his hard drives, email boxes, and text messages, at Dr. Stanley's cost.

We ask that you instruct Dr. Stanley to preserve (and not destroy) all emails and text messages concerning the article or the lawsuit and not to meddle with any witness's response to the subpoena.

We can discuss more tomorrow at mediation and in the coming days.

Regards,
Matt

**Matt Cavanagh**
Member

T: 216.348.5730          600 Superior Avenue East
M: 216.496.5834          Suite 2100
F: 216.348.5474          Cleveland, OH 44114
mcavanagh@mcdonaldhopkins.com
www.mcdonaldhopkins.com


complaint letters(32432105.1)
.pdf



BJ O'Sullivan subpoena
response(32432137.1).pdf

 Gmail

Bonnie Jean O'Sullivan <bjosullivan7@gmail.com>

## JUCM MD Complaint
1 message

**Anthony Stanley** <tuff57@msn.com>
To: Bonnie Jean O'Sullivan <bjosullivan7@gmail.com>

Thu, Dec 2, 2021 at 6:34 PM

Hello BJ:

Thanks for your help. The JUMC staff cut and pasted various sections **out of** my paper with out permission, and made the whole document disjointed reading. They also did not print any of the pictures properly. The picture they printed are too small and too much color in the borders. There is a lot of unauthorized editing with my copyrighted work. It would help also if they were synchronized with the topics. Below is the complaint letter . It encompasses the key issues with the printed article that will support my case. Fee free to edit as you like. Send the completed letter to my e mail:

anthonys@baptisthealth.net

Hello Dr. Stanley:

I came across your June 1, 2021 article (**An Urgent Care Approach to Fishhook Removal**) online, early October, on the Journal of Urgent Care Medicine website. It seemed like a timely article that would summarize all the current ways to remove a fishhook. I wanted to use it for our Urgent Care Journal Club meeting, upon reading the article I noticed multiple typographical errors. I was very disappointed, and had difficulty trying to comprehend the written subject matter, and follow along with the photos which are not synchronized with the reading . You also alluded to the fact that there needs to be more research in fishhook injury and related demographics. However, the discussion seemed disconnected somehow. Lastly, you talked about a new concept, a fishhook removal system but the discussion was limited. Over all, it was poorly written by you as a physician and author. The JUCM should share the blame for not proof reading. It's a great topic but needs to be presented to the medical community properly. I am a monthly reader of the JUMC and surprised of this body of work they released to the medical community! I have read several medical journals with mistakes in the past and like them, in this case, it should be corrected and reprinted. I would love to have presented this article "**An Urgent Care Approach to Fishhook Removal**" to Journal Club at our urgent care.

I was hesitant to contact you, but just felt you should know.

Sincerely

XXXXXXXXXXXXXX , MD

11:14 

  

Anthony

Happy Mother's Day!

Thank you!!

Tue, Jul 4 at 3:39 PM



Happy 4th If July!! Hope all is well 😃

Read 7/4/23

Monday 7:21 PM

Hello BJ:

Not sure if you are busy,Call me when you get a chance the JUCM is has sent a subpoena to everybody who complained about the article and tried to help me! You are not alone with the subpoena. Do not talk to anyone from CritiCare it will only cause confusion. Give me a call Doc

   

**UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF FLORIDA**

**MIAMI DIVISION**
**CASE NO. 1:23-cv-20793-PAS**

ANTHONY STANLEY, M.D.

                       Plaintiff,

    vs.

   THE BRAVEHEART GROUP, LLC, a New Jersey
   Limited Liability Company, d/b/a
   THE JOURNAL OF URGENT CARE MEDICINE

Defendants.

_____/

# EXHIBIT G

**To**
**ATTORNEY BARRY OLIVER CHASE'S RESPONSE IN OPPOSITION TO**
**PLAINTIFF'S "MOTION FALSE SETTLEMENT FILING NOTIFICATION"**
**And**
**REQUEST FOR ATTORNEY FEES**
**(Filed July 12, 2024)**

**From:** Barry Chase blanche@chaselawyers.com 
**Subject:** Stanley v Braveheart -- From Barry Chase: Attached "Gentle" Redline of proposed settlement draft
**Date:** August 25, 2023 at 1:04 PM
**To:** Jeffrey S. Grubman jgrubman@stollgrublaw.com, Matthew J. Cavanagh mcavanagh@mcdonaldhopkins.com
**Cc:** Anthony Stanley stanmeddesigns@gmail.com

Apologies for the delay.



"He, Him, His"

CL.Logo.pdf
43 KB

Senior Partner
Miami 305-373-7665
New York 212-601-2762
Work-From-Home Tel: 305-788-7665

CONFIDENTIAL COMMUNICATION
E-mails from our firm often contain confidential and privileged material and are for the sole use of the intended recipient. Use or distribution by an unintended recipient is prohibited, and may be a violation of law. If you believe that you received this e-mail in error, please do not read this e-mail or any attached items. Please delete the e-mail and all attachments, including any copies thereof, and inform the sender that you have deleted the e-mail, all attachments and any copies thereof. Thank you.

IRS Circular 230 Disclosure: To ensure compliance with requirements imposed by the IRS, any U.S. federal tax advice contained in this communication (including any attachments) is not intended or written to be used, and cannot be used, for the purpose of (i) avoiding penalties under the Internal Revenue Code or (ii) promoting, marketing or recommending to another party any transaction or matter addressed herein.

Virus Warning: The sender believes that this email and any attachments were free of any virus, worm, Trojan horse, and/or malicious code when sent. By reading the message and opening any attachments, the recipient assumes the risk of viruses and other defects. ChaseLawyers® is not liable for any loss or damage arising in any way from this message or its attachments. Email transmission cannot be guaranteed to be secure or error-free as information can be intercepted, corrupted, lost, destroyed, arrive late or incomplete, or contain viruses.

Stanley.settlement.BOC-REDLINE
.docx
49 KB

### Settlement Agreement and Release

The parties to this Settlement Agreement and Release (the "Agreement") are Anthony Stanley, MD ("Dr. Stanley") and The Braveheart Group, LLC, dba the Journal of Urgent Care Medicine ("Braveheart"). Collectively, Stanley and Braveheart are the "Parties," and individually each is a "Party." The "Effective Date" of this Agreement is August 25, 2023.

### Recitals

WHEREAS, in February 2021, Dr. Stanley submitted a manuscript to Braveheart for publication in the Journal of Urgent Care Medicine (the "JUCM") regarding fishhook removal.

WHEREAS, Dr. Stanley alleged that Braveheart made unauthorized changes to the article that published in the June 2021 issue of the JUCM, and Dr. Stanley alleged that the changes caused him reputational harm and other damages. Braveheart denied Dr. Stanley's allegations~~; and~~.

WHEREAS, on February 28, 2023, Dr. Stanley sued Braveheart; Experity Inc.; Urgent Care Association, Inc.; and Urgent Care College of Physicians in the case entitled *Anthony Stanley, M.D. v. The Braveheart Group, LLC* et al., No. 1:23-cv-20793-PAS, United States District Court for the Southern District of Florida, Judge Patricia Seitz presiding (the "Action~~".~~"); and

WHEREAS, on July 14, 2023, Dr. Stanley amended his complaint and dropped all defendants except for Braveheart~~.~~; and

WHEREAS, the Parties now desire to resolve their dispute to avoid the cost and effort of further litigation, and have agreed to entirely settle their dispute in accordance with the written terms stated below~~.~~.

NOW, THEREFORE, in consideration of the mutual covenants contained herein, and for other good and valuable consideration, the receipt and sufficiency of which hereby is acknowledged, and intending to be legally bound, the Parties hereby stipulate and agree as follows:

### Terms

~~1.~~ Dr. Stanley's Release. Dr. Stanley, on behalf of himself, and any business that Stanley owns or controls, and any of Dr. Stanley's or ~~her~~his business's predecessors, affiliates, parents, subsidiaries, related corporate entities, successors, assigns, directors, officers, members, partners, representatives, employees, insurers, agents, and owners, whether past or present~~,~~ (collectively, the "Stanley Releasing Parties~~"~~"), hereby release Braveheart, the JUCM, the other defendants originally named in the Action, and all other individuals or businesses involved with the June 2021 edition of the JUCM, the fishhook removal article contained therein, or the retraction efforts that followed, and any of their predecessors, affiliates, parents, subsidiaries, related corporate entities, successors, assigns, directors, officers,

1.     members, partners, representatives, employees, insurers, agents, and owners, whether past or present, and any other individuals or entities connected to the fishhook article at issue (collectively, the "JUCM Released Parties") from any and all claims, demands, actions, causes of action or suits at law or in equity, whether under state law, federal law, or under the Copyright Act, of whatsoever kind or nature, whether known or unknown, fixed or contingent, accrued or unaccrued, asserted or unasserted, liquidated or unliquidated, that the Stanley Releasing Parties may have against the JUCM Released Parties in any way relating to or arising out of the June 2021 edition of the JUCM (including the transactions and activities underlying its publication), the fishhook removal article contained therein, the retraction efforts, including (without limitation) the claims that Dr. Stanley asserted or could have been asserted in the Action (collectively, "Stanley's Released Claims"). Stanley covenants, on behalf of himself and the Stanley Releasing Parties, not to sue any of the JUCM Released Parties on any of the Stanley Released Claims.

2.     <u>Braveheart's Release</u>. Braveheart, on behalf of itself and of its predecessors, affiliates, parents, subsidiaries, related corporate entities, successors, assigns, directors, officers, members, partners, representatives, employees, insurers, agents, and owners, whether past or present, (collectively, the "Braveheart Releasing Parties")"), hereby release Stanley from any and all claims, counterclaims, defenses, demands, actions, causes of action or suits at law or in equity, whether under state law, federal law, or under the Copyright Act, of whatsoever kind or nature, whether known or unknown, fixed or contingent, accrued or unaccrued, asserted or unasserted, liquidated or unliquidated, that the Braveheart Releasing Parties may have against Stanley in any way relating to or arising out of the June 2021 edition of the JUCM (including the transactions and activities underlying its publication), the fishhook removal article contained therein, the retraction efforts, the Action or conduct connected to the Action, including (without limitation) the defenses that Braveheart asserted or could have asserted in the Action (collectively, "Braveheart's Released Claims"). Braveheart covenants not to sue Stanley on any of Braveheart Released Claims.

3.     <u>Resubmission</u>. Stanley may submit to Braveheart an updated version of the fishhook removal article that originally appeared in the June 2021 issue of the JUCM. Braveheart will, in good faith, consider that updated article for publication pursuant to Braveheart's/JUCM's then-standard procedures and timelines, but Braveheart has no obligation to publish the updated article, and retains sole discretion to decide whether to publish it. If Braveheart decides to publish the updated article, Braveheart will provide Stanley the opportunity to review the final version of the article before it is published.

4.     <u>No Money</u>. This Agreement does not require the payment of money to or by either Party.

5.     <u>Dismissal</u>. Within seven (7) days of the Effective Date, the partiesParties will submit a joint stipulation of dismissal of the entire Action with prejudice, with the Court retaining jurisdiction over enforcement of settlement. The Parties further agree that any future dispute arising from or relating to this Agreement or the underlying subject matter will be brought to the presiding judge for the Action in the Southern District of Florida Court.

6.     Binding Effect. This Agreement shall be binding upon and inure to the benefit of the Parties and their respective successors and assigns.

7.     Costs. The Parties will bear their own costs and expenses, including attorneys' fees, associated with the Action and with the negotiation and execution of this Agreement.

8.     Confidentiality. The terms of this Agreement shall be maintained in confidence by all Parties, and no public statements beyond a confirmation of its existence or that the "Parties resolved their dispute" are to be made regarding this Agreement without the written approval of each of the Parties, except (a) as otherwise agreed to by the Parties in writing prior to any disclosure; (b) as reasonably necessary to enforce rights and obligations under this Agreement; (c) to any tax consultant, attorney, accountant, director or inventor who has a bona fide need to know business information regarding the Party, provided that such disclosure is made in confidence; and (d) in any litigation where the Party has entered into a Protective Order and this Agreement is maintained as confidential under that Protective Order. Any Party may also disclose the contents of this Agreement to the extent disclosure is required by law so long as prompt written notification is provided to the other Parties, giving them sufficient opportunity, to intervene or otherwise seek protection from disclosure. A Party obligated to disclose the Agreement may disclose it to the extent of its obligation thirty (30) days after the later of the notice to the other Parties or the final resolution of a motion for protective order or equivalent request in the relevant jurisdiction, provided that no Party shall be required to refuse any disclosure required by law if, on the advice of counsel, such Party reasonably believes that it must either disclose the requested information or be liable for contempt or otherwise be subject to civil or criminal penalty.

9.     No Admissions. In executing this Agreement, the Parties make no admissions whatsoever as to liability for any claim, and they make no admissions as to the truth or falsity of any fact alleged in the Action. Nothing in this Agreement shall be construed as an admission of liability, fault, or wrongdoing by any Party.

10.     Related Instruments. The Parties agree to sign or cause to be signed any other related instruments reasonably necessary to complete this Agreement.

11.     Severability. In the event that any provision of this Agreement is found by a court of competent jurisdiction to be contrary to any law, ordinance, or regulation, the latter shall be deemed to control, and the Agreement shall be regarded as modified accordingly and, in any event, the remainder of this Agreement shall continue in full force and effect.

12.     No Construction Against Drafters. This Agreement results from negotiations between the Parties and their respective legal counsel, and each Party acknowledges that it has had the opportunity to negotiate modifications to the language of the Agreement. Accordingly, each Party agrees that in any dispute regarding the interpretation or construction of this Agreement, no statutory, common law or other presumption shall

12.      operate in favor or against, or otherwise be strictly construed in favor or against, any Party hereto by virtue of its role in drafting or not drafting the terms and conditions set forth herein.

13.      Paragraph Headings. The paragraph headings of this Agreement are inserted only for convenience and in no way define, limit, or describe the scope or intent of this Agreement nor affect its terms and provisions.

14.      Modification. Any modification of this Agreement must be in writing and signed by all Parties. No oral modifications shall be effective to vary or alter the terms of this Agreement.

15.      Entire Agreement.  This Agreement constitutes and represents the entire agreement of the Parties hereto with respect to the subject matter hereof, and all other prior agreements, covenants, promises and conditions, verbaloral or written, between these Parties are superseded and incorporated byinto this written Agreement.

16.      Counterparts. This Agreement may be executed in counterparts by scanned electronic copy, all of which together shall constitute one agreement binding on each of the Parties hereto notwithstanding that each such Party may not have signed the same counterpart.

17.      Authorized Signature.  Each signatory hereto warrants and represents that he or she is competent and authorized to enter into this Agreement on behalf of the Party for whom the signatory purports to sign.

IN WITNESS WHEREOF, the Parties have caused this Agreement to be signed by their duly authorized representatives on the dates indicated.


On behalf of Braveheart Group, LLC


_____          _____


Dr. Anthony Stanley, M.D.              Matthew Logan, General Counsel

_____                    _____

~~Date~~    ~~Date~~                        *On behalf of Braveheart Group, LLC*


_____                    _____

Dr. Anthony Stanley, M.D.                   Matthew Logan, General Counsel


_____                    _____

Date                                        Date

5

**UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF FLORIDA**

**MIAMI DIVISION**
**CASE NO. 1:23-cv-20793-PAS**

ANTHONY STANLEY, M.D.

                Plaintiff,

vs.

THE BRAVEHEART GROUP, LLC, a New Jersey
Limited Liability Company, d/b/a
THE JOURNAL OF URGENT CARE MEDICINE

Defendants.

_____ ____/

# EXHIBIT H

**To**
**ATTORNEY BARRY OLIVER CHASE'S RESPONSE IN OPPOSITION TO**
**PLAINTIFF'S "MOTION FALSE SETTLEMENT FILING NOTIFICATION"**
**And**
**REQUEST FOR ATTORNEY FEES**
**(Filed July 12, 2024)**

**From:** **Barry Chase** blanche@chaselawyers.com 
**Subject:** From Barry Chase -- Please sign as and where indicated on Page 4.
**Date:** August 25, 2023 at 1:29 PM
**To:** Anthony Stanley stanmeddesigns@gmail.com
**Cc:** Anastasia Latman anastasia@chaselawyers.com

We have agreement on the terms of the Settlement Agreement (attached below), which preserves your right to re-submit the revised article (after Ana and/or I revise the typos), which JUCM must receive and handle "in good faith" according to their then-standard procedures and timelines.

Please print out, sign on page 4, scan and email back to me.

Let me know if there will be a delay because of (for example) lack of scanning capacity, so that I can inform the other side and the Mediator.

Thx.



"He, Him, His"
Senior Partner
Miami 305-373-7665
New York 212-601-2762
Work-From-Home Tel: 305-788-7665

CONFIDENTIAL COMMUNICATION
E-mails from our firm often contain confidential and privileged material and are for the sole use of the intended recipient. Use or distribution by an unintended recipient is prohibited, and may be a violation of law. If you believe that you received this e-mail in error, please do not read this e-mail or any attached items. Please delete the e-mail and all attachments, including any copies thereof, and inform the sender that you have deleted the e-mail, all attachments and any copies thereof. Thank you.

IRS Circular 230 Disclosure: To ensure compliance with requirements imposed by the IRS, any U.S. federal tax advice contained in this communication (including any attachments) is not intended or written to be used, and cannot be used, for the purpose of (i) avoiding penalties under the Internal Revenue Code or (ii) promoting, marketing or recommending to another party any transaction or matter addressed herein.

Virus Warning: The sender believes that this email and any attachments were free of any virus, worm, Trojan horse, and/or malicious code when sent. By reading the message and opening any attachments, the recipient assumes the risk of viruses and other defects. ChaseLawyers® is not liable for any loss or damage arising in any way from this message or its attachments. Email transmission cannot be guaranteed to be secure or error-free as information can be intercepted, corrupted, lost, destroyed, arrive late or incomplete, or contain viruses.

Settlement (FINAL)(32437828.2)
.docx
26 KB


Settlement Agreement and Release

The parties to this Settlement Agreement and Release (the "Agreement") are Anthony Stanley, MD ("Dr. Stanley") and The Braveheart Group, LLC, dba the Journal of Urgent Care Medicine ("Braveheart"). Collectively, Stanley and Braveheart are the "Parties," and individually each is a "Party." The "Effective Date" of this Agreement is August 25, 2023.

Recitals

WHEREAS, in February 2021, Dr. Stanley submitted a manuscript to Braveheart for publication in the Journal of Urgent Care Medicine (the "JUCM") regarding fishhook removal.

WHEREAS, Dr. Stanley alleged that Braveheart made unauthorized changes to the article that published in the June 2021 issue of the JUCM, and Dr. Stanley alleged that the changes caused him reputational harm and other damages. Braveheart denied Dr. Stanley's allegations; and

WHEREAS, on February 28, 2023, Dr. Stanley sued Braveheart; Experity Inc.; Urgent Care Association, Inc.; and Urgent Care College of Physicians in the case entitled *Anthony Stanley, M.D. v. The Braveheart Group, LLC* et al., No. 1:23-cv-20793-PAS, United States District Court for the Southern District of Florida, Judge Patricia Seitz presiding (the "Action"); and

WHEREAS, on July 14, 2023, Dr. Stanley amended his complaint and dropped all defendants except for Braveheart; and

WHEREAS, the Parties now desire to resolve their dispute to avoid the cost and effort of further litigation, and have agreed to entirely settle their dispute in accordance with the written terms stated below,

NOW, THEREFORE, in consideration of the mutual covenants contained herein, and for other good and valuable consideration, the receipt and sufficiency of which hereby is acknowledged, and intending to be legally bound, the Parties hereby stipulate and agree as follows:

Terms

1.     Dr. Stanley's Release. Dr. Stanley, on behalf of himself, and any business that Stanley owns or controls, and any of Dr. Stanley's or his business's predecessors, affiliates, parents, subsidiaries, related corporate entities, successors, assigns, directors, officers, members, partners, representatives, employees, insurers, agents, and owners, whether past or present (collectively, the "Stanley Releasing Parties"), hereby release Braveheart, the JUCM, the other defendants originally named in the Action, and all other individuals or businesses involved with the June 2021 edition of the JUCM, the fishhook removal article contained therein, or the retraction efforts that followed, and any of their predecessors, affiliates, parents, subsidiaries, related corporate entities, successors, assigns, directors, officers, members, partners, representatives, employees, insurers, agents,

32437828.2

and owners, whether past or present, and any other individuals or entities connected to the fishhook article at issue (collectively, the "JUCM Released Parties") from any and all claims, demands, actions, causes of action or suits at law or in equity, whether under state law, federal law, or under the Copyright Act, of whatsoever kind or nature, whether known or unknown, fixed or contingent, accrued or unaccrued, asserted or unasserted, liquidated or unliquidated, that the Stanley Releasing Parties may have against the JUCM Released Parties in any way relating to or arising out of the June 2021 edition of the JUCM (including the transactions and activities underlying its publication), the fishhook removal article contained therein, the retraction efforts, including (without limitation) the claims that Dr. Stanley asserted or could have been asserted in the Action (collectively, "Stanley's Released Claims"). Stanley covenants, on behalf of himself and the Stanley Releasing Parties, not to sue any of the JUCM Released Parties on any of the Stanley Released Claims.

2.  <u>Braveheart's Release</u>. Braveheart, on behalf of itself and of its predecessors, affiliates, parents, subsidiaries, related corporate entities, successors, assigns, directors, officers, members, partners, representatives, employees, insurers, agents, and owners, whether past or present (collectively, the "Braveheart Releasing Parties"), hereby release Stanley from any and all claims, counterclaims, defenses, demands, actions, causes of action or suits at law or in equity, whether under state law, federal law, or under the Copyright Act, of whatsoever kind or nature, whether known or unknown, fixed or contingent, accrued or unaccrued, asserted or unasserted, liquidated or unliquidated, that the Braveheart Releasing Parties may have against Stanley in any way relating to or arising out of the June 2021 edition of the JUCM (including the transactions and activities underlying its publication), the fishhook removal article contained therein, the retraction efforts, the Action or conduct connected to the Action, including (without limitation) the defenses that Braveheart asserted or could have asserted in the Action (collectively, "Braveheart's Released Claims"). Braveheart covenants not to sue Stanley on any of Braveheart Released Claims.

3.  <u>Resubmission</u>. Stanley may submit to Braveheart an updated version of the fishhook removal article that originally appeared in the June 2021 issue of the JUCM. Braveheart will, in good faith, consider that updated article for publication pursuant to Braveheart's/JUCM's then-standard procedures and timelines, but Braveheart has no obligation to publish the updated article and retains sole discretion to decide whether to publish it. If Braveheart decides to publish the updated article, Braveheart will provide Stanley the opportunity to review the final version of the article before it is published.

4.  <u>No Money</u>. This Agreement does not require the payment of money to or by either Party.

5.  <u>Dismissal</u>. Within seven (7) days of the Effective Date, the Parties will submit a joint stipulation of dismissal of the entire Action with prejudice, with the Court retaining jurisdiction over enforcement of settlement. The Parties further agree that any future dispute arising from or relating to this Agreement or the underlying subject matter will be brought to the presiding judge for the Action in the Southern District of Florida Court.

32437828.2

6.      <u>Binding Effect</u>. This Agreement shall be binding upon and inure to the benefit of the Parties and their respective successors and assigns.

7.      <u>Costs</u>. The Parties will bear their own costs and expenses, including attorneys' fees, associated with the Action and with the negotiation and execution of this Agreement.

8.      <u>Confidentiality</u>. The terms of this Agreement shall be maintained in confidence by all Parties, and no public statements beyond a confirmation of its existence or that the "Parties resolved their dispute" are to be made regarding this Agreement without the written approval of each of the Parties, except (a) as otherwise agreed to by the Parties in writing prior to any disclosure; (b) as reasonably necessary to enforce rights and obligations under this Agreement; (c) to any tax consultant, attorney, accountant, director or inventor who has a bona fide need to know business information regarding the Party, provided that such disclosure is made in confidence; and (d) in any litigation where the Party has entered into a Protective Order and this Agreement is maintained as confidential under that Protective Order. Any Party may also disclose the contents of this Agreement to the extent disclosure is required by law so long as prompt written notification is provided to the other Parties, giving them sufficient opportunity to intervene or otherwise seek protection from disclosure. A Party obligated to disclose the Agreement may disclose it to the extent of its obligation thirty (30) days after the later of the notice to the other Parties or the final resolution of a motion for protective order or equivalent request in the relevant jurisdiction, provided that no Party shall be required to refuse any disclosure required by law if, on the advice of counsel, such Party reasonably believes that it must either disclose the requested information or be liable for contempt or otherwise be subject to civil or criminal penalty.

9.      <u>No Admissions</u>. In executing this Agreement, the Parties make no admissions whatsoever as to liability for any claim, and they make no admissions as to the truth or falsity of any fact alleged in the Action. Nothing in this Agreement shall be construed as an admission of liability, fault, or wrongdoing by any Party.

10.     <u>Related Instruments</u>. The Parties agree to sign or cause to be signed any other related instruments reasonably necessary to complete this Agreement.

11.     <u>Severability</u>. In the event that any provision of this Agreement is found by a court of competent jurisdiction to be contrary to any law, ordinance, or regulation, the latter shall be deemed to control, and the Agreement shall be regarded as modified accordingly and, in any event, the remainder of this Agreement shall continue in full force and effect.

12.     <u>No Construction Against Drafters</u>. This Agreement results from negotiations between the Parties and their respective legal counsel, and each Party acknowledges that it has had the opportunity to negotiate modifications to the language of the Agreement. Accordingly, each Party agrees that in any dispute regarding the interpretation or construction of this Agreement, no statutory, common law or other presumption shall operate in favor or against, or otherwise be

32437828.2

strictly construed in favor or against, any Party hereto by virtue of its role in drafting or not drafting the terms and conditions set forth herein.

13.  <u>Paragraph Headings</u>. The paragraph headings of this Agreement are inserted only for convenience and in no way define, limit, or describe the scope or intent of this Agreement nor affect its terms and provisions.

14.  <u>Modification</u>. Any modification of this Agreement must be in writing and signed by all Parties. No oral modifications shall be effective to vary or alter the terms of this Agreement.

15.  <u>Entire Agreement</u>. This Agreement constitutes and represents the entire agreement of the Parties hereto with respect to the subject matter hereof, and all other prior agreements, covenants, promises and conditions, oral or written, between these Parties are superseded and incorporated into this written Agreement.

16.  <u>Counterparts</u>. This Agreement may be executed in counterparts by scanned electronic copy, all of which together shall constitute one agreement binding on each of the Parties hereto notwithstanding that each such Party may not have signed the same counterpart.

17.  <u>Authorized Signature</u>. Each signatory hereto warrants and represents that  he or she is competent and authorized to enter into this Agreement on behalf of the Party for whom the signatory purports to sign.

IN WITNESS WHEREOF, the Parties have caused this Agreement to be signed by their duly authorized representatives on the dates indicated.


*On behalf of Braveheart Group, LLC*


_____          _____
Dr. Anthony Stanley, M.D.                         Matthew Logan, General Counsel


_____          _____
Date                                              Date

32437828.2

**UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF FLORIDA**

**MIAMI DIVISION**
**CASE NO. 1:23-cv-20793-PAS**

ANTHONY STANLEY, M.D.

                Plaintiff,

vs.

  THE BRAVEHEART GROUP, LLC, a New Jersey
  Limited Liability Company, d/b/a
  THE JOURNAL OF URGENT CARE MEDICINE

Defendants.

_____/

# EXHIBIT J

**To**
**ATTORNEY BARRY OLIVER CHASE'S RESPONSE IN OPPOSITION TO**
**PLAINTIFF'S "MOTION FALSE SETTLEMENT FILING NOTIFICATION"**
**And**
**REQUEST FOR ATTORNEY FEES**
**(Filed July 12, 2024)**

**From:** Barry Chase blanche@chaselawyers.com ▉
**Subject:** From Barry Chase -- Fwd: Draft Settlement
**Date:** August 25, 2023 at 12:01 PM
**To:** Anthony Stanley stanmeddesigns@gmail.com
**Cc:** Anastasia Latman anastasia@chaselawyers.com



I have just received the attached.

Please review and give me your comments ASAP so that we can resume the Mediation process.

BARRY

> Begin forwarded message:
>
> **From:** "Cavanagh, Matthew J." <mcavanagh@mcdonaldhopkins.com>
> **Subject:** Draft Settlement
> **Date:** August 25, 2023 at 11:38:27 AM EDT
> **To:** 'Barry Chase' <barry@chaselawyers.com>
> **Cc:** 'jeffrey grubman' <jeffgrubman@icloud.com>, 'Matthew Logan' <Matthew.Logan@experityhealth.com>
>
> Barry,
>
> Attached is a draft for you and Dr. Stanley to review.
>
> **Matt Cavanagh**
> Member
>
> T: 216.348.5730               600 Superior Avenue East
> M: 216.496.5834               Suite 2100
> F: 216.348.5474               Cleveland, OH 44114
> mcavanagh@mcdonaldhopkins.com
> www.mcdonaldhopkins.com



A business advisory and advocacy law firm®



    settlement (Stanley v. JUCM)
    (32435104.1).docx
    35 KB

<u>Settlement Agreement and Release</u>

The parties to this Settlement Agreement and Release (the "Agreement") are Anthony Stanley, MD and The Braveheart Group, LLC, dba the Journal of Urgent Care Medicine ("Braveheart"). Collectively, Stanley and Braveheart are the "Parties," and individually each is a "Party." The "Effective Date" of this Agreement is August 25, 2023.

<u>Recitals</u>

WHEREAS, in February 2021, Stanley submitted a manuscript to Braveheart for publication in the Journal of Urgent Care Medicine (the "JUCM") regarding fishhook removal.

WHEREAS, Stanley alleged that Braveheart made unauthorized changes to the article that published in the June 2021 issue of the JUCM, and Stanley alleged that the changes caused him reputational harm and other damages. Braveheart denied Stanley's allegations.

WHEREAS, on February 28, 2023, Stanley sued Braveheart; Experity Inc.; Urgent Care Association, Inc.; and Urgent Care College of Physicians in the case entitled *Anthony Stanley, M.D. v. The Braveheart Group, LLC* et al., No. 1:23-cv-20793-PAS, United States District Court for the Southern District of Florida, Judge Patricia Seitz presiding (the "Action").

WHEREAS, on July 14, 2023, Stanley amended his complaint and dropped all defendants except for Braveheart.

WHEREAS, the Parties now desire to resolve their dispute to avoid the cost and effort of further litigation, and have agreed to entirely settle their dispute in accordance with the written terms stated below.

NOW, THEREFORE, in consideration of the mutual covenants contained herein, and for other good and valuable consideration, the receipt and sufficiency of which hereby is acknowledged, and intending to be legally bound, the Parties hereby stipulate and agree as follows:

<u>Terms</u>

1.      <u>Stanley's Release</u>. Stanley, on behalf of himself, and any business that Stanley owns or controls, and any of Stanley's or her business's predecessors, affiliates, parents, subsidiaries, related corporate entities, successors, assigns, directors, officers, members, partners, representatives, employees, insurers, agents, and owners, whether past or present, (collectively, the "Stanley Releasing Parties") hereby release Braveheart, the JUCM, the other defendants originally named in the Action, and all other individuals or businesses involved with the June 2021 edition of the JUCM, the fishhook removal article contained therein, or the retraction efforts that followed, and any of their predecessors, affiliates, parents, subsidiaries, related corporate entities, successors, assigns, directors, officers,

32435104.1

members, partners, representatives, employees, insurers, agents, and owners, whether past or present, and any other individuals or entities connected to the fishhook article at issue (collectively, the "JUCM Released Parties") from any and all claims, demands, actions, causes of action or suits at law or in equity, whether under state law, federal law, or under the Copyright Act, of whatsoever kind or nature, whether known or unknown, fixed or contingent, accrued or unaccrued, asserted or unasserted, liquidated or unliquidated, that the Stanley Releasing Parties may have against the JUCM Released Parties in any way relating to or arising out of the June 2021 edition of the JUCM (including the transactions and activities underlying its publication), the fishhook removal article contained therein, the retraction efforts, including (without limitation) the claims that Stanley asserted or could have been asserted in the Action (collectively, "Stanley's Released Claims"). Stanley covenants, on behalf of himself and the Stanley Releasing Parties, not to sue any of the JUCM Released Parties on any of the Stanley Released Claims.

2.     <u>Braveheart's Release</u>. Braveheart, on behalf of itself and of its predecessors, affiliates, parents, subsidiaries, related corporate entities, successors, assigns, directors, officers, members, partners, representatives, employees, insurers, agents, and owners, whether past or present, (collectively, the "Braveheart Releasing Parties") hereby release Stanley from any and all claims, counterclaims, defenses, demands, actions, causes of action or suits at law or in equity, whether under state law, federal law, or under the Copyright Act, of whatsoever kind or nature, whether known or unknown, fixed or contingent, accrued or unaccrued, asserted or unasserted, liquidated or unliquidated, that the Braveheart Releasing Parties may have against Stanley in any way relating to or arising out of the June 2021 edition of the JUCM (including the transactions and activities underlying its publication), the fishhook removal article contained therein, the retraction efforts, the Action or conduct connected to the Action, including (without limitation) the defenses that Braveheart asserted or could have asserted in the Action (collectively, "Braveheart's Released Claims"). Braveheart covenants not to sue Stanley on any of Braveheart Released Claims.

3.     <u>Resubmission</u>. Stanley may submit to Braveheart an updated version of the fishhook removal article that originally appeared in the June 2021 issue of the JUCM. Braveheart will consider that updated article for publication, but Braveheart has no obligation to publish the updated article, and retains sole discretion to decide whether to publish it. If Braveheart decides to publish the updated article, Braveheart will provide Stanley the opportunity to review the article before it is published.

4.     <u>No Money</u>. This Agreement does not require the payment of money to or by either Party.

5.     <u>Dismissal</u>. Within seven days of the Effective Date, the parties will submit a joint stipulation of dismissal of the entire Action with prejudice with the Court retaining jurisdiction over enforcement of settlement. The Parties further agree that any future dispute arising from or relating to this Agreement or the underlying subject matter will be brought to the presiding judge for the Action in the Southern District of Florida Court.

6.    <u>Binding Effect</u>. This Agreement shall be binding upon and inure to the benefit of the Parties and their respective successors and assigns.

7.    <u>Costs</u>. The Parties will bear their own costs and expenses, including attorneys' fees, associated with the Action and with the negotiation and execution of this Agreement.

8.    <u>Confidentiality</u>. The terms of this Agreement shall be maintained in confidence by all Parties, and no public statements beyond a confirmation of its existence or that the "Parties resolved their dispute" are to be made regarding this Agreement without the written approval of each of the Parties, except (a) as otherwise agreed to by the Parties in writing prior to any disclosure; (b) as reasonably necessary to enforce rights and obligations under this Agreement; (c) to any tax consultant, attorney, accountant, director or inventor who has a bona fide need to know business information regarding the Party, provided that such disclosure is made in confidence; and (d) in any litigation where the Party has entered into a Protective Order and this Agreement is maintained as confidential under that Protective Order. Any Party may also disclose the contents of this Agreement to the extent disclosure is required by law so long as prompt written notification is provided to the other Parties, giving them sufficient opportunity, to intervene or otherwise seek protection from disclosure. A Party obligated to disclose the Agreement may disclose it to the extent of its obligation 30 days after the later of the notice to the other Parties or the final resolution of a motion for protective order or equivalent request in the relevant jurisdiction, provided that no Party shall be required to refuse any disclosure required by law if, on the advice of counsel, such Party reasonably believes that it must either disclose the requested information or be liable for contempt or otherwise be subject to civil or criminal penalty.

9.    <u>No Admissions</u>. In executing this Agreement, the Parties make no admissions whatsoever as to liability for any claim, and they make no admissions as to the truth or falsity of any fact alleged in the Action. Nothing in this Agreement shall be construed as an admission of liability, fault, or wrongdoing by any Party.

10.    <u>Related Instruments</u>. The Parties agree to sign or cause to be signed any other related instruments reasonably necessary to complete this Agreement.

11.    <u>Severability</u>. In the event that any provision of this Agreement is found by a court of competent jurisdiction to be contrary to any law, ordinance, or regulation, the latter shall be deemed to control, and the Agreement shall be regarded as modified accordingly and, in any event, the remainder of this Agreement shall continue in full force and effect.

12.    <u>No Construction Against Drafters</u>. This Agreement results from negotiations between the Parties and their respective legal counsel, and each Party acknowledges that it has had the opportunity to negotiate modifications to the language of the Agreement. Accordingly, each Party agrees that in any dispute regarding the interpretation or construction of this Agreement, no statutory, common law or other presumption shall

32435104.1

operate in favor or against, or otherwise be strictly construed in favor or against, any Party hereto by virtue of its role in drafting or not drafting the terms and conditions set forth herein.

13.     <u>Paragraph Headings</u>. The paragraph headings of this Agreement are inserted only for convenience and in no way define, limit, or describe the scope or intent of this Agreement nor affect its terms and provisions.

14.     <u>Modification</u>. Any modification of this Agreement must be in writing and signed by all Parties. No oral modifications shall be effective to vary or alter the terms of this Agreement.

15.     <u>Entire Agreement</u>.  This Agreement constitutes and represents the entire agreement of the Parties hereto with respect to the subject matter hereof, and all other prior agreements, covenants, promises and conditions, verbal or written, between these Parties are superseded and incorporated by this written Agreement.

16.     <u>Counterparts</u>. This Agreement may be executed in counterparts by scanned electronic copy, all of which together shall constitute one agreement binding on each of the Parties hereto notwithstanding that each such Party may not have signed the same counterpart.

17.     <u>Authorized Signature</u>.  Each signatory hereto warrants and represents that he or she is competent and authorized to enter into this Agreement on behalf of the Party for whom the signatory purports to sign.

IN WITNESS WHEREOF, the Parties have caused this Agreement to be signed by their duly authorized representatives on the dates indicated.


*On behalf of Braveheart Group, LLC*


_____          _____
Dr. Anthony Stanley, M.D.                    Matthew Logan, General Counsel


_____          _____
Date                                         Date

4

32435104.1

**From:** **Barry Chase** blanche@chaselawyers.com 
**Subject:** From BOC -- My "Gentle Redline" of Proposed Settlement Agreement with BH.,
**Date:** August 25, 2023 at 12:20 PM
**To:** Anthony Stanley stanmeddesigns@gmail.com
**Cc:** Anastasia Latman anastasia@chaselawyers.com

BC

Please review ASAP.

*/Barry Chase/*

"He, Him, His"

Senior Partner
Miami 305-373-7665
New York 212-601-2762
Work-From-Home Tel: 305-788-7665

CONFIDENTIAL COMMUNICATION
E-mails from our firm often contain confidential and privileged material and are for the sole use of the intended recipient. Use or distribution by an unintended recipient is prohibited, and may be a violation of law. If you believe that you received this e-mail in error, please do not read this e-mail or any attached items. Please delete the e-mail and all attachments, including any copies thereof, and inform the sender that you have deleted the e-mail, all attachments and any copies thereof. Thank you.

IRS Circular 230 Disclosure: To ensure compliance with requirements imposed by the IRS, any U.S. federal tax advice contained in this communication (including any attachments) is not intended or written to be used, and cannot be used, for the purpose of (i) avoiding penalties under the Internal Revenue Code or (ii) promoting, marketing or recommending to another party any transaction or matter addressed herein.

Virus Warning: The sender believes that this email and any attachments were free of any virus, worm, Trojan horse, and/or malicious code when sent. By reading the message and opening any attachments, the recipient assumes the risk of viruses and other defects. ChaseLawyers® is not liable for any loss or damage arising in any way from this message or its attachments. Email transmission cannot be guaranteed to be secure or error-free as information can be intercepted, corrupted, lost, destroyed, arrive late or incomplete, or contain viruses.

**Stanlkey.BOC-**
**REDLINE.settlement with BH.docx** 
49 KB

<u>Settlement Agreement and Release</u>

The parties to this Settlement Agreement and Release (the "Agreement") are Anthony Stanley, MD <u>("Stanley")</u> and The Braveheart Group, LLC, dba the Journal of Urgent Care Medicine ("Braveheart"). Collectively, Stanley and Braveheart are the "Parties," and individually each is a "Party." The "Effective Date" of this Agreement is August 25, 2023.

<u>Recitals</u>

WHEREAS, in February 2021, Stanley submitted a manuscript to Braveheart for publication in the Journal of Urgent Care Medicine (the "JUCM") regarding fishhook removal.

WHEREAS, Stanley alleged that Braveheart made unauthorized changes to the article that published in the June 2021 issue of the JUCM, and Stanley alleged that the changes caused him reputational harm and other damages. Braveheart denied Stanley's allegations<u>.;</u> <u>and</u>

WHEREAS, on February 28, 2023, Stanley sued Braveheart; Experity Inc.; Urgent Care Association, Inc.; and Urgent Care College of Physicians in the case entitled *Anthony Stanley, M.D. v. The Braveheart Group, LLC* et al., No. 1:23-cv-20793-PAS, United States District Court for the Southern District of Florida, Judge Patricia Seitz presiding (the "Action"<u>).").; and</u>

WHEREAS, on July 14, 2023, Stanley amended his complaint and dropped all defendants except for Braveheart<u>.; and</u>

WHEREAS, the Parties now desire to resolve their dispute to avoid the cost and effort of further litigation, and have agreed to entirely settle their dispute in accordance with the written terms stated below<u>.,</u>

<u> </u>NOW, THEREFORE, in consideration of the mutual covenants contained herein, and for other good and valuable consideration, the receipt and sufficiency of which hereby is acknowledged, and intending to be legally bound, the Parties hereby stipulate and agree as follows:

<u>Terms</u>

<s>1.</s> <u>Stanley's Release</u>. Stanley, on behalf of himself, and any business that Stanley owns or controls, and any of Stanley's or <s>her</s><u>his</u> business's predecessors, affiliates, parents, subsidiaries, related corporate entities, successors, assigns, directors, officers, members, partners, representatives, employees, insurers, agents, and owners, whether past or present<s>,</s> (collectively, the "Stanley Releasing Parties"<u>"),</u> hereby release Braveheart, the JUCM, the other defendants originally named in the Action, and all other individuals or businesses involved with the June 2021 edition of the JUCM, the fishhook removal article contained therein, or the retraction efforts that followed, and any of their predecessors, affiliates, parents, subsidiaries, related corporate entities, successors, assigns, directors, officers,

1.      members, partners, representatives, employees, insurers, agents, and owners, whether past or present, and any other individuals or entities connected to the fishhook article at issue (collectively, the "JUCM Released Parties") from any and all claims, demands, actions, causes of action or suits at law or in equity, whether under state law, federal law, or under the Copyright Act, of whatsoever kind or nature, whether known or unknown, fixed or contingent, accrued or unaccrued, asserted or unasserted, liquidated or unliquidated, that the Stanley Releasing Parties may have against the JUCM Released Parties in any way relating to or arising out of the June 2021 edition of the JUCM (including the transactions and activities underlying its publication), the fishhook removal article contained therein, the retraction efforts, including (without limitation) the claims that Stanley asserted or could have been asserted in the Action (collectively, "Stanley's Released Claims"). Stanley covenants, on behalf of himself and the Stanley Releasing Parties, not to sue any of the JUCM Released Parties on any of the Stanley Released Claims.

2.      Braveheart's Release. Braveheart, on behalf of itself and of its predecessors, affiliates, parents, subsidiaries, related corporate entities, successors, assigns, directors, officers, members, partners, representatives, employees, insurers, agents, and owners, whether past or present, (collectively, the "Braveheart Releasing Parties"), hereby release Stanley from any and all claims, counterclaims, defenses, demands, actions, causes of action or suits at law or in equity, whether under state law, federal law, or under the Copyright Act, of whatsoever kind or nature, whether known or unknown, fixed or contingent, accrued or unaccrued, asserted or unasserted, liquidated or unliquidated, that the Braveheart Releasing Parties may have against Stanley in any way relating to or arising out of the June 2021 edition of the JUCM (including the transactions and activities underlying its publication), the fishhook removal article contained therein, the retraction efforts, the Action or conduct connected to the Action, including (without limitation) the defenses that Braveheart asserted or could have asserted in the Action (collectively, "Braveheart's Released Claims"). Braveheart covenants not to sue Stanley on any of Braveheart Released Claims.

3.      Resubmission. Stanley may submit to Braveheart an updated version of the fishhook removal article that originally appeared in the June 2021 issue of the JUCM. Braveheart will consider that updated article for publication, but Braveheart has no obligation to publish the updated article, and retains sole discretion to decide whether to publish it. If Braveheart decides to publish the updated article, Braveheart will provide Stanley the opportunity to review the final version of the article before it is published.

4.      No Money. This Agreement does not require the payment of money to or by either Party.

5.      Dismissal. Within seven days of the Effective Date, the parties will submit a joint stipulation of dismissal of the entire Action with prejudice, with the Court retaining jurisdiction over enforcement of settlement. The Parties further agree that any future dispute arising from or relating to this Agreement or the underlying subject matter will be brought to the presiding judge for the Action in the Southern District of Florida Court.

6.      <u>Binding Effect</u>. This Agreement shall be binding upon and inure to the benefit of the Parties and their respective successors and assigns.

7.      <u>Costs</u>. The Parties will bear their own costs and expenses, including attorneys' fees, associated with the Action and with the negotiation and execution of this Agreement.

8.      <u>Confidentiality</u>. The terms of this Agreement shall be maintained in confidence by all Parties, and no public statements beyond a confirmation of its existence or that the "Parties resolved their dispute" are to be made regarding this Agreement without the written approval of each of the Parties, except (a) as otherwise agreed to by the Parties in writing prior to any disclosure; (b) as reasonably necessary to enforce rights and obligations under this Agreement; (c) to any tax consultant, attorney, accountant, director or inventor who has a bona fide need to know business information regarding the Party, provided that such disclosure is made in confidence; and (d) in any litigation where the Party has entered into a Protective Order and this Agreement is maintained as confidential under that Protective Order. Any Party may also disclose the contents of this Agreement to the extent disclosure is required by law so long as prompt written notification is provided to the other Parties, giving them sufficient opportunity to intervene or otherwise seek protection from disclosure. A Party obligated to disclose the Agreement may disclose it to the extent of its obligation 30 days after the later of the notice to the other Parties or the final resolution of a motion for protective order or equivalent request in the relevant jurisdiction, provided that no Party shall be required to refuse any disclosure required by law if, on the advice of counsel, such Party reasonably believes that it must either disclose the requested information or be liable for contempt or otherwise be subject to civil or criminal penalty.

9.      <u>No Admissions</u>. In executing this Agreement, the Parties make no admissions whatsoever as to liability for any claim, and they make no admissions as to the truth or falsity of any fact alleged in the Action. Nothing in this Agreement shall be construed as an admission of liability, fault, or wrongdoing by any Party.

10.     <u>Related Instruments</u>. The Parties agree to sign or cause to be signed any other related instruments reasonably necessary to complete this Agreement.

11.     <u>Severability</u>. In the event that any provision of this Agreement is found by a court of competent jurisdiction to be contrary to any law, ordinance, or regulation, the latter shall be deemed to control, and the Agreement shall be regarded as modified accordingly and, in any event, the remainder of this Agreement shall continue in full force and effect.

~~12.~~     <u>No Construction Against Drafters</u>. This Agreement results from negotiations between the Parties and their respective legal counsel, and each Party acknowledges that it has had the opportunity to negotiate modifications to the language of the Agreement. Accordingly, each Party agrees that in any dispute regarding the interpretation or construction of this Agreement, no statutory, common law or other presumption shall

12.     operate in favor or against, or otherwise be strictly construed in favor or against, any Party hereto by virtue of its role in drafting or not drafting the terms and conditions set forth herein.

13.     <u>Paragraph Headings</u>. The paragraph headings of this Agreement are inserted only for convenience and in no way define, limit, or describe the scope or intent of this Agreement nor affect its terms and provisions.

14.     <u>Modification</u>. Any modification of this Agreement must be in writing and signed by all Parties. No oral modifications shall be effective to vary or alter the terms of this Agreement.

15.     <u>Entire Agreement</u>.  This Agreement constitutes and represents the entire agreement of the Parties hereto with respect to the subject matter hereof, and all other prior agreements, covenants, promises and conditions, ~~verbal~~oral or written, between these Parties are superseded and incorporated ~~by~~into this written Agreement.

16.     <u>Counterparts</u>. This Agreement may be executed in counterparts by scanned electronic copy, all of which together shall constitute one agreement binding on each of the Parties hereto notwithstanding that each such Party may not have signed the same counterpart.

17.     <u>Authorized Signature</u>.  Each signatory hereto warrants and represents  that he or she is competent and authorized to enter into this Agreement on behalf of the Party for whom the signatory purports to sign.

IN WITNESS WHEREOF, the Parties have caused this Agreement to be signed by their duly authorized representatives on the dates indicated.


*On behalf of Braveheart Group, LLC*


_____        _____

Dr. Anthony Stanley, M.D.                  Matthew Logan, General Counsel

_____          _____

Date    Date                              *On behalf of Braveheart Group, LLC*


_____          _____

Dr. Anthony Stanley, M.D.                 Matthew Logan, General Counsel


_____          _____

Date                                      Date

5

**UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF FLORIDA**

**MIAMI DIVISION**
**CASE NO. 1:23-cv-20793-PAS**

ANTHONY STANLEY, M.D.

                    Plaintiff,

      vs.

   THE BRAVEHEART GROUP, LLC, a New Jersey
   Limited Liability Company, d/b/a
   THE JOURNAL OF URGENT CARE MEDICINE

Defendants.
_____/

# EXHIBIT L

**To**
**ATTORNEY BARRY OLIVER CHASE'S RESPONSE IN OPPOSITION TO**
**PLAINTIFF'S "MOTION FALSE SETTLEMENT FILING NOTIFICATION"**
**And**
**REQUEST FOR ATTORNEY FEES**
**(Filed July 12, 2024)**

**From:** Barry Chase blanche@chaselawyers.com 
**Subject:** Stanley v Braveheart -- From Barry Chase: Attached "Gentle" Redline of proposed settlement draft
**Date:** August 25, 2023 at 1:04 PM
**To:** Jeffrey S. Grubman jgrubman@stollgrublaw.com, Matthew J. Cavanagh mcavanagh@mcdonaldhopkins.com
**Cc:** Anthony Stanley stanmeddesigns@gmail.com



Apologies for the delay.



"He, Him, His"

CL.Logo.pdf
43 KB


Senior Partner
Miami 305-373-7665
New York 212-601-2762
Work-From-Home Tel: 305-788-7665

CONFIDENTIAL COMMUNICATION
E-mails from our firm often contain confidential and privileged material and are for the sole use of the intended recipient. Use or distribution by an unintended recipient is prohibited, and may be a violation of law. If you believe that you received this e-mail in error, please do not read this e-mail or any attached items. Please delete the e-mail and all attachments, including any copies thereof, and inform the sender that you have deleted the e-mail, all attachments and any copies thereof. Thank you.

IRS Circular 230 Disclosure:  To ensure compliance with requirements imposed by the IRS, any U.S. federal tax advice contained in this communication (including any attachments) is not intended or written to be used, and cannot be used, for the purpose of (i) avoiding penalties under the Internal Revenue Code or (ii) promoting, marketing or recommending to another party any transaction or matter addressed herein.

Virus Warning: The sender believes that this email and any attachments were free of any virus, worm, Trojan horse, and/or malicious code when sent.  By reading the message and opening any attachments, the recipient  assumes the risk of viruses and other defects. ChaseLawyers® is not liable for any loss or damage arising in any way from this message or its attachments.  Email transmission cannot be guaranteed to be secure or error-free as information can be intercepted, corrupted, lost, destroyed, arrive late or incomplete, or contain viruses.

Stanley.settlement.BOC-REDLINE.docx
49 KB

Settlement Agreement and Release

The parties to this Settlement Agreement and Release (the "Agreement") are Anthony Stanley, MD ("Dr. Stanley") and The Braveheart Group, LLC, dba the Journal of Urgent Care Medicine ("Braveheart"). Collectively, Stanley and Braveheart are the "Parties," and individually each is a "Party." The "Effective Date" of this Agreement is August 25, 2023.

Recitals

WHEREAS, in February 2021, Dr. Stanley submitted a manuscript to Braveheart for publication in the Journal of Urgent Care Medicine (the "JUCM") regarding fishhook removal.

WHEREAS, Dr. Stanley alleged that Braveheart made unauthorized changes to the article that published in the June 2021 issue of the JUCM, and Dr. Stanley alleged that the changes caused him reputational harm and other damages. Braveheart denied Dr. Stanley's allegations~~.~~; and

WHEREAS, on February 28, 2023, Dr. Stanley sued Braveheart; Experity Inc.; Urgent Care Association, Inc.; and Urgent Care College of Physicians in the case entitled *Anthony Stanley, M.D. v. The Braveheart Group, LLC* et al., No. 1:23-cv-20793-PAS, United States District Court for the Southern District of Florida, Judge Patricia Seitz presiding (the "Action~~").~~"); and

WHEREAS, on July 14, 2023, Dr. Stanley amended his complaint and dropped all defendants except for Braveheart~~.~~; and

WHEREAS, the Parties now desire to resolve their dispute to avoid the cost and effort of further litigation, and have agreed to entirely settle their dispute in accordance with the written terms stated below~~.~~.

NOW, THEREFORE, in consideration of the mutual covenants contained herein, and for other good and valuable consideration, the receipt and sufficiency of which hereby is acknowledged, and intending to be legally bound, the Parties hereby stipulate and agree as follows:

Terms

~~1.~~ Dr. Stanley's Release. Dr. Stanley, on behalf of himself, and any business that Stanley owns or controls, and any of Dr. Stanley's or ~~her~~his business's predecessors, affiliates, parents, subsidiaries, related corporate entities, successors, assigns, directors, officers, members, partners, representatives, employees, insurers, agents, and owners, whether past or present~~,~~ (collectively, the "Stanley Releasing Parties~~")~~"), hereby release Braveheart, the JUCM, the other defendants originally named in the Action, and all other individuals or businesses involved with the June 2021 edition of the JUCM, the fishhook removal article contained therein, or the retraction efforts that followed, and any of their predecessors, affiliates, parents, subsidiaries, related corporate entities, successors, assigns, directors, officers,

1._____ members, partners, representatives, employees, insurers, agents, and owners, whether past or present, and any other individuals or entities connected to the fishhook article at issue (collectively, the "JUCM Released Parties") from any and all claims, demands, actions, causes of action or suits at law or in equity, whether under state law, federal law, or under the Copyright Act, of whatsoever kind or nature, whether known or unknown, fixed or contingent, accrued or unaccrued, asserted or unasserted, liquidated or unliquidated, that the Stanley Releasing Parties may have against the JUCM Released Parties in any way relating to or arising out of the June 2021 edition of the JUCM (including the transactions and activities underlying its publication), the fishhook removal article contained therein, the retraction efforts, including (without limitation) the claims that Dr. Stanley asserted or could have been asserted in the Action (collectively, "Stanley's Released Claims"). Stanley covenants, on behalf of himself and the Stanley Releasing Parties, not to sue any of the JUCM Released Parties on any of the Stanley Released Claims.

2.    Braveheart's Release. Braveheart, on behalf of itself and of its predecessors, affiliates, parents, subsidiaries, related corporate entities, successors, assigns, directors, officers, members, partners, representatives, employees, insurers, agents, and owners, whether past or present, (collectively, the "Braveheart Releasing Parties")"), hereby release Stanley from any and all claims, counterclaims, defenses, demands, actions, causes of action or suits at law or in equity, whether under state law, federal law, or under the Copyright Act, of whatsoever kind or nature, whether known or unknown, fixed or contingent, accrued or unaccrued, asserted or unasserted, liquidated or unliquidated, that the Braveheart Releasing Parties may have against Stanley in any way relating to or arising out of the June 2021 edition of the JUCM (including the transactions and activities underlying its publication), the fishhook removal article contained therein, the retraction efforts, the Action or conduct connected to the Action, including (without limitation) the defenses that Braveheart asserted or could have asserted in the Action (collectively, "Braveheart's Released Claims"). Braveheart covenants not to sue Stanley on any of Braveheart Released Claims.

3.    Resubmission. Stanley may submit to Braveheart an updated version of the fishhook removal article that originally appeared in the June 2021 issue of the JUCM. Braveheart will, in good faith, consider that updated article for publication pursuant to Braveheart's/JUCM's then-standard procedures and timelines, but Braveheart has no obligation to publish the updated article, and retains sole discretion to decide whether to publish it. If Braveheart decides to publish the updated article, Braveheart will provide Stanley the opportunity to review the final version of the article before it is published.

4.    No Money. This Agreement does not require the payment of money to or by either Party.

5.    Dismissal. Within seven (7) days of the Effective Date, the partiesParties will submit a joint stipulation of dismissal of the entire Action with prejudice, with the Court retaining jurisdiction over enforcement of settlement. The Parties further agree that any future dispute arising from or relating to this Agreement or the underlying subject matter will be brought to the presiding judge for the Action in the Southern District of Florida Court.

6.      Binding Effect. This Agreement shall be binding upon and inure to the benefit of the Parties and their respective successors and assigns.

7.      Costs. The Parties will bear their own costs and expenses, including attorneys' fees, associated with the Action and with the negotiation and execution of this Agreement.

8.      Confidentiality. The terms of this Agreement shall be maintained in confidence by all Parties, and no public statements beyond a confirmation of its existence or that the "Parties resolved their dispute" are to be made regarding this Agreement without the written approval of each of the Parties, except (a) as otherwise agreed to by the Parties in writing prior to any disclosure; (b) as reasonably necessary to enforce rights and obligations under this Agreement; (c) to any tax consultant, attorney, accountant, director or inventor who has a bona fide need to know business information regarding the Party, provided that such disclosure is made in confidence; and (d) in any litigation where the Party has entered into a Protective Order and this Agreement is maintained as confidential under that Protective Order. Any Party may also disclose the contents of this Agreement to the extent disclosure is required by law so long as prompt written notification is provided to the other Parties, giving them sufficient opportunity to intervene or otherwise seek protection from disclosure. A Party obligated to disclose the Agreement may disclose it to the extent of its obligation thirty (30) days after the later of the notice to the other Parties or the final resolution of a motion for protective order or equivalent request in the relevant jurisdiction, provided that no Party shall be required to refuse any disclosure required by law if, on the advice of counsel, such Party reasonably believes that it must either disclose the requested information or be liable for contempt or otherwise be subject to civil or criminal penalty.

9.      No Admissions. In executing this Agreement, the Parties make no admissions whatsoever as to liability for any claim, and they make no admissions as to the truth or falsity of any fact alleged in the Action. Nothing in this Agreement shall be construed as an admission of liability, fault, or wrongdoing by any Party.

10.      Related Instruments. The Parties agree to sign or cause to be signed any other related instruments reasonably necessary to complete this Agreement.

11.      Severability. In the event that any provision of this Agreement is found by a court of competent jurisdiction to be contrary to any law, ordinance, or regulation, the latter shall be deemed to control, and the Agreement shall be regarded as modified accordingly and, in any event, the remainder of this Agreement shall continue in full force and effect.

12.      No Construction Against Drafters. This Agreement results from negotiations between the Parties and their respective legal counsel, and each Party acknowledges that it has had the opportunity to negotiate modifications to the language of the Agreement. Accordingly, each Party agrees that in any dispute regarding the interpretation or construction of this Agreement, no statutory, common law or other presumption shall

12.     operate in favor or against, or otherwise be strictly construed in favor or against, any Party hereto by virtue of its role in drafting or not drafting the terms and conditions set forth herein.

13.     <u>Paragraph Headings</u>. The paragraph headings of this Agreement are inserted only for convenience and in no way define, limit, or describe the scope or intent of this Agreement nor affect its terms and provisions.

14.     <u>Modification</u>. Any modification of this Agreement must be in writing and signed by all Parties. No oral modifications shall be effective to vary or alter the terms of this Agreement.

15.     <u>Entire Agreement</u>.  This Agreement constitutes and represents the entire agreement of the Parties hereto with respect to the subject matter hereof, and all other prior agreements, covenants, promises and conditions, ~~verbal~~oral or written, between these Parties are superseded and incorporated ~~by~~into this written Agreement.

16.     <u>Counterparts</u>. This Agreement may be executed in counterparts by scanned electronic copy, all of which together shall constitute one agreement binding on each of the Parties hereto notwithstanding that each such Party may not have signed the same counterpart.

17.     <u>Authorized Signature</u>.  Each signatory hereto warrants and represents~~ ~~ that he or she is competent and authorized to enter into this Agreement on behalf of the Party for whom the signatory purports to sign.

IN WITNESS WHEREOF, the Parties have caused this Agreement to be signed by their duly authorized representatives on the dates indicated.


~~On behalf of Braveheart Group, LLC~~


_____         _____

~~Dr. Anthony Stanley, M.D.~~                ~~Matthew Logan, General Counsel~~

_____                    _____

~~Date     Date~~

*On behalf of Braveheart Group, LLC*

_____                    _____

Dr. Anthony Stanley, M.D.                          Matthew Logan, General Counsel

_____                    _____

Date                                               Date

5

**UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF FLORIDA**

**MIAMI DIVISION**
**CASE NO. 1:23-cv-20793-PAS**

ANTHONY STANLEY, M.D.

                Plaintiff,

    vs.

THE BRAVEHEART GROUP, LLC, a New Jersey
Limited Liability Company, d/b/a
THE JOURNAL OF URGENT CARE MEDICINE

Defendants.
_____/

# EXHIBIT M

**To**
**ATTORNEY BARRY OLIVER CHASE'S RESPONSE IN OPPOSITION TO**
**PLAINTIFF'S "MOTION FALSE SETTLEMENT FILING NOTIFICATION"**
**And**
**REQUEST FOR ATTORNEY FEES**
**(Filed July 12, 2024)**

**From:** **Barry Chase** blanche@chaselawyers.com 
**Subject:** From Barry Chase -- Please sign as and where indicated on Page 4.
**Date:** August 25, 2023 at 1:29 PM
**To:** Anthony Stanley stanmeddesigns@gmail.com
**Cc:** Anastasia Latman anastasia@chaselawyers.com

We have agreement on the terms of the Settlement Agreement (attached below), which preserves your right to re-submit the revised article (after Ana and/or I revise the typos), which JUCM must receive and handle "in good faith" according to their then-standard procedures and timelines.

Please print out, sign on page 4, scan and email back to me.

Let me know if there will be a delay because of (for example) lack of scanning capacity, so that I can inform the other side and the Mediator.

Thx.



*/Barry Chase/*

"He, Him, His"
Senior Partner
Miami 305-373-7665
New York 212-601-2762
Work-From-Home Tel: 305-788-7665

CONFIDENTIAL COMMUNICATION
E-mails from our firm often contain confidential and privileged material and are for the sole use of the intended recipient. Use or distribution by an unintended recipient is prohibited, and may be a violation of law. If you believe that you received this e-mail in error, please do not read this e-mail or any attached items. Please delete the e-mail and all attachments, including any copies thereof, and inform the sender that you have deleted the e-mail, all attachments and any copies thereof. Thank you.

IRS Circular 230 Disclosure:  To ensure compliance with requirements imposed by the IRS, any U.S. federal tax advice contained in this communication (including any attachments) is not intended or written to be used, and cannot be used, for the purpose of (i) avoiding penalties under the Internal Revenue Code or (ii) promoting, marketing or recommending to another party any transaction or matter addressed herein.

Virus Warning: The sender believes that this email and any attachments were free of any virus, worm, Trojan horse, and/or malicious code when sent.  By reading the message and opening any attachments, the recipient  assumes the risk of viruses and other defects. ChaseLawyers® is not liable for any loss or damage arising in any way from this message or its attachments.  Email transmission cannot be guaranteed to be secure or error-free as information can be intercepted, corrupted, lost, destroyed, arrive late or incomplete, or contain viruses.

**Settlement (FINAL)(32437828.2)
.docx**
26 KB


<u>Settlement Agreement and Release</u>

The parties to this Settlement Agreement and Release (the "Agreement") are Anthony Stanley, MD ("Dr. Stanley") and The Braveheart Group, LLC, dba the Journal of Urgent Care Medicine ("Braveheart"). Collectively, Stanley and Braveheart are the "Parties," and individually each is a "Party." The "Effective Date" of this Agreement is August 25, 2023.

<u>Recitals</u>

WHEREAS, in February 2021, Dr. Stanley submitted a manuscript to Braveheart for publication in the Journal of Urgent Care Medicine (the "JUCM") regarding fishhook removal.

WHEREAS, Dr. Stanley alleged that Braveheart made unauthorized changes to the article that published in the June 2021 issue of the JUCM, and Dr. Stanley alleged that the changes caused him reputational harm and other damages. Braveheart denied Dr. Stanley's allegations; and

WHEREAS, on February 28, 2023, Dr. Stanley sued Braveheart; Experity Inc.; Urgent Care Association, Inc.; and Urgent Care College of Physicians in the case entitled *Anthony Stanley, M.D. v. The Braveheart Group, LLC* et al., No. 1:23-cv-20793-PAS, United States District Court for the Southern District of Florida, Judge Patricia Seitz presiding (the "Action"); and

WHEREAS, on July 14, 2023, Dr. Stanley amended his complaint and dropped all defendants except for Braveheart; and

WHEREAS, the Parties now desire to resolve their dispute to avoid the cost and effort of further litigation, and have agreed to entirely settle their dispute in accordance with the written terms stated below,

NOW, THEREFORE, in consideration of the mutual covenants contained herein, and for other good and valuable consideration, the receipt and sufficiency of which hereby is acknowledged, and intending to be legally bound, the Parties hereby stipulate and agree as follows:

<u>Terms</u>

1.      <u>Dr. Stanley's Release</u>. Dr. Stanley, on behalf of himself, and any business that Stanley owns or controls, and any of Dr. Stanley's or his business's predecessors, affiliates, parents, subsidiaries, related corporate entities, successors, assigns, directors, officers, members, partners, representatives, employees, insurers, agents, and owners, whether past or present (collectively, the "Stanley Releasing Parties"), hereby release Braveheart, the JUCM, the other defendants originally named in the Action, and all other individuals or businesses involved with the June 2021 edition of the JUCM, the fishhook removal article contained therein, or the retraction efforts that followed, and any of their predecessors, affiliates, parents, subsidiaries, related corporate entities, successors, assigns, directors, officers, members, partners, representatives, employees, insurers, agents,

32437828.2

and owners, whether past or present, and any other individuals or entities connected to the fishhook article at issue (collectively, the "JUCM Released Parties") from any and all claims, demands, actions, causes of action or suits at law or in equity, whether under state law, federal law, or under the Copyright Act, of whatsoever kind or nature, whether known or unknown, fixed or contingent, accrued or unaccrued, asserted or unasserted, liquidated or unliquidated, that the Stanley Releasing Parties may have against the JUCM Released Parties in any way relating to or arising out of the June 2021 edition of the JUCM (including the transactions and activities underlying its publication), the fishhook removal article contained therein, the retraction efforts, including (without limitation) the claims that Dr. Stanley asserted or could have been asserted in the Action (collectively, "Stanley's Released Claims"). Stanley covenants, on behalf of himself and the Stanley Releasing Parties, not to sue any of the JUCM Released Parties on any of the Stanley Released Claims.

2.      Braveheart's Release. Braveheart, on behalf of itself and of its predecessors, affiliates, parents, subsidiaries, related corporate entities, successors, assigns, directors, officers, members, partners, representatives, employees, insurers, agents, and owners, whether past or present (collectively, the "Braveheart Releasing Parties"), hereby release Stanley from any and all claims, counterclaims, defenses, demands, actions, causes of action or suits at law or in equity, whether under state law, federal law, or under the Copyright Act, of whatsoever kind or nature, whether known or unknown, fixed or contingent, accrued or unaccrued, asserted or unasserted, liquidated or unliquidated, that the Braveheart Releasing Parties may have against Stanley in any way relating to or arising out of the June 2021 edition of the JUCM (including the transactions and activities underlying its publication), the fishhook removal article contained therein, the retraction efforts, the Action or conduct connected to the Action, including (without limitation) the defenses that Braveheart asserted or could have asserted in the Action (collectively, "Braveheart's Released Claims"). Braveheart covenants not to sue Stanley on any of Braveheart Released Claims.

3.      Resubmission. Stanley may submit to Braveheart an updated version of the fishhook removal article that originally appeared in the June 2021 issue of the JUCM. Braveheart will, in good faith, consider that updated article for publication pursuant to Braveheart's/JUCM's then-standard procedures and timelines, but Braveheart has no obligation to publish the updated article and retains sole discretion to decide whether to publish it. If Braveheart decides to publish the updated article, Braveheart will provide Stanley the opportunity to review the final version of the article before it is published.

4.      No Money. This Agreement does not require the payment of money to or by either Party.

5.      Dismissal. Within seven (7) days of the Effective Date, the Parties will submit a joint stipulation of dismissal of the entire Action with prejudice, with the Court retaining jurisdiction over enforcement of settlement. The Parties further agree that any future dispute arising from or relating to this Agreement or the underlying subject matter will be brought to the presiding judge for the Action in the Southern District of Florida Court.

2

6.      <u>Binding Effect</u>. This Agreement shall be binding upon and inure to the benefit of the Parties and their respective successors and assigns.

7.      <u>Costs</u>. The Parties will bear their own costs and expenses, including attorneys' fees, associated with the Action and with the negotiation and execution of this Agreement.

8.      <u>Confidentiality</u>. The terms of this Agreement shall be maintained in confidence by all Parties, and no public statements beyond a confirmation of its existence or that the "Parties resolved their dispute" are to be made regarding this Agreement without the written approval of each of the Parties, except (a) as otherwise agreed to by the Parties in writing prior to any disclosure; (b) as reasonably necessary to enforce rights and obligations under this Agreement; (c) to any tax consultant, attorney, accountant, director or inventor who has a bona fide need to know business information regarding the Party, provided that such disclosure is made in confidence; and (d) in any litigation where the Party has entered into a Protective Order and this Agreement is maintained as confidential under that Protective Order. Any Party may also disclose the contents of this Agreement to the extent disclosure is required by law so long as prompt written notification is provided to the other Parties, giving them sufficient opportunity to intervene or otherwise seek protection from disclosure. A Party obligated to disclose the Agreement may disclose it to the extent of its obligation thirty (30) days after the later of the notice to the other Parties or the final resolution of a motion for protective order or equivalent request in the relevant jurisdiction, provided that no Party shall be required to refuse any disclosure required by law if, on the advice of counsel, such Party reasonably believes that it must either disclose the requested information or be liable for contempt or otherwise be subject to civil or criminal penalty.

9.      <u>No Admissions</u>. In executing this Agreement, the Parties make no admissions whatsoever as to liability for any claim, and they make no admissions as to the truth or falsity of any fact alleged in the Action. Nothing in this Agreement shall be construed as an admission of liability, fault, or wrongdoing by any Party.

10.      <u>Related Instruments</u>. The Parties agree to sign or cause to be signed any other related instruments reasonably necessary to complete this Agreement.

11.      <u>Severability</u>. In the event that any provision of this Agreement is found by a court of competent jurisdiction to be contrary to any law, ordinance, or regulation, the latter shall be deemed to control, and the Agreement shall be regarded as modified accordingly and, in any event, the remainder of this Agreement shall continue in full force and effect.

12.      <u>No Construction Against Drafters</u>. This Agreement results from negotiations between the Parties and their respective legal counsel, and each Party acknowledges that it has had the opportunity to negotiate modifications to the language of the Agreement. Accordingly, each Party agrees that in any dispute regarding the interpretation or construction of this Agreement, no statutory, common law or other presumption shall operate in favor or against, or otherwise be

strictly construed in favor or against, any Party hereto by virtue of its role in drafting or not drafting the terms and conditions set forth herein.

13.     <u>Paragraph Headings</u>. The paragraph headings of this Agreement are inserted only for convenience and in no way define, limit, or describe the scope or intent of this Agreement nor affect its terms and provisions.

14.     <u>Modification</u>. Any modification of this Agreement must be in writing and signed by all Parties. No oral modifications shall be effective to vary or alter the terms of this Agreement.

15.     <u>Entire Agreement</u>. This Agreement constitutes and represents the entire agreement of the Parties hereto with respect to the subject matter hereof, and all other prior agreements, covenants, promises and conditions, oral or written, between these Parties are superseded and incorporated into this written Agreement.

16.     <u>Counterparts</u>. This Agreement may be executed in counterparts by scanned electronic copy, all of which together shall constitute one agreement binding on each of the Parties hereto notwithstanding that each such Party may not have signed the same counterpart.

17.     <u>Authorized Signature</u>. Each signatory hereto warrants and represents that  he or she is competent and authorized to enter into this Agreement on behalf of the Party for whom the signatory purports to sign.

IN WITNESS WHEREOF, the Parties have caused this Agreement to be signed by their duly authorized representatives on the dates indicated.


*On behalf of Braveheart Group, LLC*


_____          _____
Dr. Anthony Stanley, M.D.                          Matthew Logan, General Counsel


_____          _____
Date                                                        Date

**UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF FLORIDA**

**MIAMI DIVISION**
**CASE NO. 1:23-cv-20793-PAS**

ANTHONY STANLEY, M.D.

Plaintiff,

vs.

THE BRAVEHEART GROUP, LLC, a New Jersey
Limited Liability Company, d/b/a
THE JOURNAL OF URGENT CARE MEDICINE

Defendants.

_____ ____ /

# EXHIBIT N
**To**
**ATTORNEY BARRY OLIVER CHASE'S RESPONSE IN OPPOSITION TO**
**PLAINTIFF'S "MOTION FALSE SETTLEMENT FILING NOTIFICATION"**
**And**
**REQUEST FOR ATTORNEY FEES**
**(Filed July 12, 2024)**

**From:** **Barry Chase** blanche@chaselawyers.com 
**Subject:** Fwd: Page 4
**Date:** August 25, 2023 at 2:51 PM
**To:** Matthew J. Cavanagh mcavanagh@mcdonaldhopkins.com, Jeffrey S. Grubman jgrubman@jamsadr.com

Here is page 4, executed and photographed.

Cheers.

Matt:

Please send me a conformed final of some type.



"He, Him, His"



CL.Logo.pdf
43 KB

Senior Partner
Miami 305-373-7665
New York 212-601-2762
Work-From-Home Tel: 305-788-7665

CONFIDENTIAL COMMUNICATION
E-mails from our firm often contain confidential and privileged material and are for the sole use of the intended recipient. Use or distribution by an unintended recipient is prohibited, and may be a violation of law. If you believe that you received this e-mail in error, please do not read this e-mail or any attached items. Please delete the e-mail and all attachments, including any copies thereof, and inform the sender that you have deleted the e-mail, all attachments and any copies thereof. Thank you.

IRS Circular 230 Disclosure:  To ensure compliance with requirements imposed by the IRS, any U.S. federal tax advice contained in this communication (including any attachments) is not intended or written to be used, and cannot be used, for the purpose of (i) avoiding penalties under the Internal Revenue Code or (ii) promoting, marketing or recommending to another party any transaction or matter addressed herein.

Virus Warning: The sender believes that this email and any attachments were free of any virus, worm, Trojan horse, and/or malicious code when sent.  By reading the message and opening any attachments, the recipient  assumes the risk of viruses and other defects. ChaseLawyers® is not liable for any loss or damage arising in any way from this message or its attachments.  Email transmission cannot be guaranteed to be secure or error-free as information can be intercepted, corrupted, lost, destroyed, arrive late or incomplete, or contain viruses.

Begin forwarded message:

**From:** Anthony Stanley MD <stanmeddesigns@gmail.com>
**Subject: Page 4**
**Date:** August 25, 2023 at 2:48:34 PM EDT
**To:** jgrubman@jamsadr.com
**Cc:** Barry Chase <barry@chaselawyers.com>, Anastasia Latman <anastasia@chaselawyers.com>



13.     Paragraph Headings. The paragraph headings of this Agreement are inserted only for convenience and in no way define, limit, or describe the scope or intent of this Agreement nor affect its terms and provisions.

14.     Modification. Any modification of this Agreement must be in writing and signed by all Parties. No oral modifications shall be effective to vary or alter the terms of this Agreement.

15.     Entire Agreement.  This Agreement constitutes and represents the entire agreement of the Parties hereto with respect to the subject matter hereof, and all other prior agreements, covenants, promises and conditions, verbal or written, between these Parties are superseded and incorporated by this written Agreement.

16.     Counterparts. This Agreement may be executed in counterparts by scanned electronic copy, all of which together shall constitute one agreement binding on each of the Parties hereto notwithstanding that each such Party may not have signed the same counterpart.

17.     Authorized Signature.  Each signatory hereto warrants and represents that he or she is competent and authorized to enter into this Agreement on behalf of the Party for whom the signatory purports to sign.

IN WITNESS WHEREOF, the Parties have caused this Agreement to be signed by their duly authorized representatives on the dates indicated.

*On behalf of Braveheart Group, LLC*

_____          _____
Dr. Anthony Stanley, M.D.                    Matthew Logan, General Counsel

8/25/2023                                    _____
Date                                          Date

32435104.1                          4

**UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF FLORIDA**

**MIAMI DIVISION**
**CASE NO. 1:23-cv-20793-PAS**

ANTHONY STANLEY, M.D.

                            Plaintiff,

      vs.

  THE BRAVEHEART GROUP, LLC, a New Jersey
  Limited Liability Company, d/b/a
  THE JOURNAL OF URGENT CARE MEDICINE

Defendants.

_____/

# EXHIBIT O

**To**
**ATTORNEY BARRY OLIVER CHASE'S RESPONSE IN OPPOSITION TO**
**PLAINTIFF'S "MOTION FALSE SETTLEMENT FILING NOTIFICATION"**
**And**
**REQUEST FOR ATTORNEY FEES**
**(Filed July 12, 2024)**



Ok Barry, thank you and Ana for staying with me today! Sorry I made a couple of bad decisions trying to help.

Dr Stanley

On Fri, Aug 25, 2023 at 4:47 PM Barry Chase <blanche@chaselawyers.com> wrote:
No. Go take care of your mom.

Thx.

> On Aug 25, 2023, at 4:38 PM, Anthony Stanley MD <stanmeddesigns@gmail.com> wrote:
>
> Barry, do you need me to stay around , if not will go and check on Mom.  I can log in on her computer in 40 minutes otherwise I will stay here at the condo?
> Thanks
> Dr. Stanley

**UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF FLORIDA**

**MIAMI DIVISION**
**CASE NO. 1:23-cv-20793-PAS**

ANTHONY STANLEY, M.D.

                    Plaintiff,

     vs.

   THE BRAVEHEART GROUP, LLC, a New Jersey
   Limited Liability Company, d/b/a
   THE JOURNAL OF URGENT CARE MEDICINE

Defendants.

_____/

# EXHIBIT P

**To**
**ATTORNEY BARRY OLIVER CHASE'S RESPONSE IN OPPOSITION TO**
**PLAINTIFF'S "MOTION FALSE SETTLEMENT FILING NOTIFICATION"**
**And**
**REQUEST FOR ATTORNEY FEES**
**(Filed July 12, 2024)**

**From:** **Anthony Stanley MD** stanmeddesigns@gmail.com
**Subject:** Re: From Barry Chase -- Attached "Redline" and "Clean-as-Revised" Versions of Revised Article
**Date:** October 25, 2023 at 1:39 PM
**To:** Barry Chase admin@chaselawyers.com
**Cc:** Anastasia Latman anastasia@chaselawyers.com



ok we will proceed with the copyright.
Dr. Stanley

On Wed, Oct 25, 2023 at 11:36 AM Barry Chase <admin@chaselawyers.com> wrote:
> In my opinion, it would be **EXTREMELY INADVISABLE** to attempt any re-opening of the Settlement terms, and our firm would not participate in any such effort.
>
> It is important that you realize that you are AT LEGAL RISK, in that you caused misrepresentations to be made to the Court. You "manufactured" after-the-fact bogus evidence to support your claims and thereby filed (unbeknownst to us, since you deceived us as well) fraudulent papers with the Court, which is a SERIOUS OFFENSE, possibly punishable by a contempt citation and even jail time.
>
> You must understand that it was only because of our healthy professional relationship with JUCM's lawyers and the JAMS Mediator that we were able to obtain the "walkaway" settlement that we did. Having succeeded in extricating you from what could have been a truly disastrous outcome, we will have nothing to do with any effort to revisit that outcome, which you and we were lucky to achieve.



"He, Him, His"

Senior Partner
Miami 305-373-7665
New York 212-601-2762
Work-From-Home Tel: 305-788-7665

CONFIDENTIAL COMMUNICATION
E-mails from our firm often contain confidential and privileged material and are for the sole use of the intended recipient. Use or distribution by an unintended recipient is prohibited, and may be a violation of law. If you believe that you received this e-mail in error, please do not read this e-mail or any attached items. Please delete the e-mail and all attachments, including any copies thereof, and inform the sender that you have deleted the e-mail, all attachments and any copies thereof. Thank you.

IRS Circular 230 Disclosure: To ensure compliance with requirements imposed by the IRS, any U.S. federal tax advice contained in this communication (including any attachments) is not intended or written to be used, and cannot be used, for the purpose of (i) avoiding penalties under the Internal Revenue Code or (ii) promoting, marketing or recommending to another party any transaction or matter addressed herein.

Virus Warning: The sender believes that this email and any attachments were free of any virus, worm, Trojan horse, and/or malicious code when sent. By reading the message and opening any attachments, the recipient assumes the risk of viruses and other defects. ChaseLawyers® is not liable for any loss or damage arising in any way from this message or its attachments. Email transmission cannot be guaranteed to be secure or error-free as information can be intercepted, corrupted, lost, destroyed, arrive late or incomplete, or contain viruses.

On Oct 25, 2023, at 10:37 AM, Anthony Stanley MD <stanmeddesigns@gmail.com> wrote:

# REDACTED

Lastly, **off hand**, I just want to know. What is the statute of limitation on an appeal of the case settlement with the JUCM? **Attorney Cavanagh** and **Attorney Furman** took excessive **advantage of me personally, mentally** and not to mention **my entire family** at the settlement, including the **release of civil rights of my entire family** and Stanley medical designs, inc (to give up all rights of future challenge). The problem is they never asked me but assumed I am a 100% owner. I am not the principal owner of Stanley Medical Designs, Inc ( I only own 25% since establishment in 2015) nor can i sign away the personal civil rights of all the family members owner/ heirs of Stanley Medical Designs, Inc. and their personal ownership in several of the medical device patent(s) (listed at the patent office), and associated business interest, that were dragged into the case. Attorney Cavanagh listed everything he could think of on the settlement which was quickly crafted based on error-ridden ownership assumptions from the beginning. The settlement was poorly crafted in haste and improper in general for the situation intruding on the Civil right of others. It's sad Barry, it is all due to poor printing /editing by the JUCM!

**I just want to know ,What is the statute of limitation on an appeal ??**

Thanks talk with you soon.
Dr. Stanley

On Mon, Oct 23, 2023 at 4:25 PM Barry Chase <admin@chaselawyers.com> wrote:

On Mon, Oct 23, 2023 at 4:25 PM Barry Chase <admin@chaselawyers.com> wrote:

Hello again, Dr. Stanley:

Please find attached below my "redline" and "clean-as-revised" versions of the new article. Obviously, you will be accepting/rejecting these recommendations based on your own judgment.

Best personal regards.

*|Barry Chase|*

"He, Him, His"

Senior Partner
Miami 305-373-7665
New York 212-601-2762
Work-From-Home Tel: 305-788-7665

CONFIDENTIAL COMMUNICATION
E-mails from our firm often contain confidential and privileged material and are for the sole use of the intended recipient. Use or distribution by an unintended recipient is prohibited, and may be a violation of law. If you believe that you received this e-mail in error, please do not read this e-mail or any attached items. Please delete the e-mail and all attachments, including any copies thereof, and inform the sender that you have deleted the e-mail, all attachments and any copies thereof. Thank you.

IRS Circular 230 Disclosure:  To ensure compliance with requirements imposed by the IRS, any U.S. federal tax advice contained in this communication (including any attachments) is not intended or written to be used, and cannot be used, for the purpose of (i) avoiding penalties under the Internal Revenue Code or (ii) promoting, marketing or recommending to another party any transaction or matter addressed herein.

Virus Warning: The sender believes that this email and any attachments were free of any virus, worm, Trojan horse, and/or malicious code when sent.  By reading the message and opening any attachments, the recipient  assumes the risk of viruses and other defects.  ChaseLawyers® is not liable for any loss or damage arising in any way from this message or its attachments.  Email transmission cannot be guaranteed to be secure or error-free as information can be intercepted, corrupted, lost, destroyed, arrive late or incomplete, or contain viruses.

<Work Copy 16.docx>